**Tommie Lou MOSLEY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 10, 1967.

James R. Odell, Joseph D. Harkins, III, Lexington, for appellant.

Robert Matthews, Atty. Gen., David Murrell, Asst. Atty. Gen., Frankfort, for appellee.

WADDILL, Commissioner.

Appellant was convicted of the crime of rape and sentenced to ten years' servitude in the state penitentiary. The sole ground for reversal of the conviction is that the trial court erred in excluding the testimony of James Gay, a psychologist, concerning the mental condition of the prosecuting witness at the time of the alleged rape.

The record reflects that for several months prior to May 11, 1966, the date of the alleged offense, Geraldine Eden, the prosecuting witness, had been staying in the home of Elihu Asher where she was employed as a full-time baby-sitter. Geraldine, who is 27 years of age, testified that during the evening of May 11, 1966, the Ashers had left their residence to go bowling. Appellant, an acquaintance of Geraldine and a relative of Asher entered the Asher home for the purpose of staying overnight. Geraldine stated that after the Asher children went to bed, appellant tried

to make love to her and when she resisted his amorous advances he forcibly tied her hands behind her back, pushed her down on a couch, removed her underclothing and raped her.

Appellant, age 54, testified that upon his arrival at the Asher residence Geraldine informed him that she wanted to talk with him before he retired. He had waited only a short time when Geraldine came over and sat beside him on a couch where they immediately began making love and Geraldine voluntarily submitted to sexual intercourse with him as she had on several previous occasions. He stated that following the intercourse they went to the kitchen and Geraldine prepared a snack for them. When they were later questioned that night as to their conduct, appellant stated that much to his surprise Geraldine claimed he had raped her.

Appellant urges that the court erred in refusing to permit the jury to consider, for the purpose of impeaching Geraldine's credibility, the testimony of Doctor Gay concerning Geraldine's mental condition. Doctor Gay has obtained a Ph D degree in psychology and has been licensed by the state of Kentucky as a clinical psychologist. (KRS 319.010 defines the practice of clinical psychology to include the administration of tests for the purpose of psychological diagnosis, classification and evaluation and recognizes services involving the reeducation, guidance or readjustment of the patient.) He is a member of the American and Kentucky Psychological Associations and is presently the psychologist in charge of the Fayette County Program, a special program at Eastern State Hospital for outpatient treatment.

Doctor Gay, who is in charge of the treatment of Geraldine's mental disorder, testified, by way of avowal out of the presence of the jury, that Geraldine had entered a state hospital for mental treatment during October 1961. At that time she was complaining that her father and brothers had molested her sexually during her adolescence. She was discharged from the hospital in January 1962 and readmitted for treatment on a voluntary basis during 1964. She has been treated by Doctor Gay since September 1965.

While Doctor Gay believed that Geraldine was in a state of remission at the time of the alleged rape, it was his opinion that she is schizophrenic and is an immature individual. She could not tolerate frustration, was easily disturbed and had a guilt complex. Doctor Gay stated that schizophrenia is a complex phenomenon, that it is a disturbance of behavorial effect and thinking which has not been found to be caused or related to any physical or organic condition, but it has a psychiatric origin, i. e. an emotional basis. He further stated that one of the manifestations of schizophrenic reaction is fantasies and when asked whether Geraldine's fantasies extend to the area of sex, he answered, "In this particular case I think it does."

Since the Commonwealth relied upon the uncorroborated testimony of Geraldine to establish its case against appellant, the principal question at issue had reference to the credit to be given to the testimony of Geraldine. Therefore, Doctor Gay's testimony may have had an important impact on the jury as it tended to impeach Geraldine's credibility.

■ It is our opinion that the proffered testimony of Doctor Gay was relevant and competent and should have been received, not in extenuation of rape, but for its bearing upon the question of the weight to be accorded Geraldine's testimony. For this reason the court should admonish the jury that the expert testimony should be considered by it only for the purpose of affecting the credibility of this witness, if it does so.

■ Generally a witness may be impeached only as specified in our Rules of Civil Procedure (CR 43.07). However, the modern trend is to permit the jury to consider expert testimony in the field of

mental disorders and relax the rule in sex offense cases. Ballard v. Superior Court of San Diego County, 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838; People v. Neely, 39 Cal.Rptr. 251. McCormick in his treatise on Evidence, Section 45 at page 99, observes:

"* * * Naturally, the use of psychiatric testimony as to mental disorders and defects suggests itself as a potential aid in determining the credibility of crucial witnesses in any kind of litigation. In one type of case, namely that of sex offenses, the indispensible value of this kind of testimony has been urged by Wigmore, and other commentators, and such testimony has been widely received by the courts. * * *."

Also see III Wigmore, Evidence, 3rd Ed. 1940, Sections 924a, 931, 932, 935, 997b, 998b, which includes a thorough compendium supporting the view of admitting in evidence expert testimony.

In State v. Armstrong, 232 N.C. 727, 62 S.E.2d 50, the importance of permitting an accused to impeach a witness for the state was pointed out as follows:

"* * * It is always open to a defendant to challenge the credibility of the witnesses offered by the prosecution who testify against him. * * *.

"What could be more effective for the purpose than to impeach the mentality or the intellectual grasp of the witness? If his interest, bias, indelicate way of life, insobriety and general bad reputation in the community may be shown as bearing upon his unworthiness of belief, why not his imbecility, want of understanding, or moronic comprehension, which go more directly to the point? * * *."

A similar conclusion was reached by the United States District Court in United States v. Hiss, 88 F.Supp. 559, wherein it was observed:

"The existence of insanity or mental derangement is admissible for the purpose of discrediting a witness. Evidence of insanity is not merely for the judge on the preliminary question of competency, but does to the jury to affect credibility. * * *."

Also see Giles v. State of Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737, which concerns itself with the prosecution's suppression of evidence relating to the credibility of the prosecution's witnesses.

We conclude that the jury was entitled to hear and consider the testimony of Doctor Gay and that its exclusion constituted prejudicial error in the case.

The judgment is reversed with directions to grant appellant a new trial.

WILLIAMS, C. J., and EDWARD P. HILL, MILLIKEN, STEINFELD, PALMORE and OSBORNE, JJ., concur.