Jessie Dale STANFORD, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 88–SC–926–MR.

Supreme Court of Kentucky.

May 24, 1990.

Rehearing Denied Sept. 6, 1990.

Frederic J. Cowan, Atty. Gen., Ian G. Sonego, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

Rodney McDaniel, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

LAMBERT, Justice.

In the judgment from which this appeal is taken, appellant was sentenced to 390 years imprisonment for the crimes of robbery in the first degree, kidnapping in the first degree, and murder. Eleven points of error have been raised and each will be addressed seriatim.

While traveling on an interstate highway in Jefferson County, appellant and two female companions encountered a stranded motorist. They stopped to render aid and after taking the motorist to a service station where he purchased gasoline, offered to return him to his car. In the course of the return trip, appellant diverted from the proper course of travel, pulled a gun on the motorist and demanded his money. The motorist was then forced to remove his clothing so appellant could check for more money. Thereafter, appellant ordered the motorist to lie in a ditch and appellant killed him with a gun. Such additional facts as may be needed for an understanding of the issues will be set forth as each issue is addressed.

The first issue raised by appellant concerns the Commonwealth's use of peremptory challenges. Appellant is a black man. Four black jurors were on the panel from which appellant's jury was chosen. The Commonwealth used peremptory challenges to strike three of these four persons. Appellant claims a violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), appellant contends the prosecutor challenged two[1] of the four black jurors solely on account of their race.

Appellant timely objected to the prosecutor's use of peremptory challenges to remove jurors Linda Robertson and John Patrick from the panel. The trial court apparently concluded that the peremptory exclusion of jurors Robertson, Patrick and Beverly Jackson, they being three of the four black persons on the jury, was sufficient to require the Commonwealth to come forward with a neutral explanation. Thus, the direct holding in *Commonwealth v. Hardy*, Ky., 775 S.W.2d 919 (1989), does not apply here.

For the exclusion of Ms. Robertson, the prosecutor relied on her lack of an employment record and the fact that her cousin had been the victim of a rape and murder by a person who received a new trial by reason of some legal technicality. The trial judge accepted this explanation and concluded that exclusion of Ms. Robertson was not motivated by her race.

With reference to juror John Patrick, the prosecutor indicated his reasons for exercising a peremptory challenge were this man's manner of dress ("a handkerchief flowing out of his suit with a red shirt on") on the day the peremptory challenges were reported to the court, his imposing appearance, and the prosecutor's perception that

---

1. Of the four black jurors called, one sat on the jury which rendered the verdict. As to one of the black jurors stricken peremptorily, Beverly Jackson, appellant accepted the prosecutor's "neutral explanation" for striking Ms. Jackson.

he was "slow." The trial court recognized that these reasons might later be challenged, but overruled appellant's objection. Appellant argues that the reasons given were merely a subterfuge for a racially motivated peremptory challenge. He points out that three white men on the jury were as big or bigger than Mr. Patrick and concludes that "the only difference between Mr. Patrick and these three jurors is that he is black and they are white."

*Batson v. Kentucky, supra,* did not abolish the use of peremptory challenges. It merely established a requirement that in a proper case the prosecution come forward with a race neutral explanation for challenging black jurors. The Court emphasized "that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause," but rejected self-serving explanations based on intuition or disclaimers of discriminatory motive. It held

"The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.,* 476 U.S. at 98, 106 S.Ct. at 1724.

The trial court held that the explanation given for the peremptory exclusion of Ms. Robertson was sufficient. The case to be tried was a murder case and her cousin had been a murder victim. We reject appellant's speculation that such a juror would likely be more favorable to the prosecution than to the defense. A family connection with a similar case coupled with this juror's lack of employment history is a sufficient race neutral explanation for her peremptory removal from the jury.

As to Mr. Patrick, it was not improper for the prosecutor to consider his flashy manner of dress, his size and perceived slowness in deciding whether to exercise a peremptory challenge. While recognizing that his decision might be subject to criticism on appeal, the trial judge accepted the explanation given.

In *Batson,* the Court squarely placed upon the trial court the responsibility to determine if the defendant had established purposeful discrimination. Citing *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Court said:

"Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Batson v. Kentucky,* 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21.

Thus, unless the trial court's findings of fact are clearly erroneous, they must be accepted. Appellant has failed to satisfy the clearly erroneous standard.

Appellant next contends that he was unfairly prejudiced and denied due process of law by the trial court's exclusion of certain evidence relevant to the mitigating factor of extreme emotional disturbance. In *McClellan v. Commonwealth,* Ky., 715 S.W.2d 464 (1986), *cert. denied,* 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987), this Court held that extreme emotional disturbance "reduces the degree of a homicide from murder to manslaughter."

The excluded evidence was placed in the record by avowal. This evidence generally indicated that appellant had a long-term history of depression, paranoid schizophrenia and borderline personality disorder. It showed instability of mood, interpersonal relationships and self-image and that during periods of extreme stress persons with borderline personality disorders may experience transient psychotic symptoms also called micropsychotic symptoms. In such circumstances, the evidence showed, judgment is affected and persons engage in behavior they would not ordinarily engage in. The question before us is whether such evidence is admissible to establish extreme emotional disturbance.

At the outset, we note that appellant's expert, Dr. Phillip Johnson, was permitted to testify before the jury during the guilt phase. He disclosed the results of various intelligence and personality tests and concluded that appellant was likely to be an alcohol or drug abuser, "a disturbed indi-

vidual who suffers from psychological disorder." Later, during the penalty phase, Dr. Johnson was again permitted to testify as to appellant's mental condition, drug use and personal history and gave much of the testimony excluded during the guilt phase.

■ The Commonwealth points out that appellant failed to comply with the notice requirements of KRS 504.070(1). This statute requires a defendant who intends to introduce evidence of his mental illness or insanity to file a written notice of his intention to introduce such evidence at least twenty days before trial. Mental illness is broadly defined in KRS 504.060(6) and includes many of the concepts contained in the excluded testimony. The Commonwealth speculates that appellant did not file the required notice to avoid application of RCr 7.24(3)(B) which authorizes a mental examination at the request of the Commonwealth. Whatever his motivation, the notice was not filed. As such, the profered evidence was properly excluded by the trial court.

In addition, this evidence was subject to exclusion as hearsay and for failure to lay a proper foundation for its admission. See *Commonwealth v. Rose*, Ky., 725 S.W.2d 588 (1987), *cert. denied*, 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 80 overruled on other grounds by *Commonwealth v. Craig*, Ky., 783 S.W.2d 387 (1990); *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985); and *Drumm v. Commonwealth*, Ky., 783 S.W.2d 380 (1990).

■ In support of this claim of error, appellant relies extensively on *Wellman v. Commonwealth*, Ky., 694 S.W.2d 696 (1985), and *McClellan v. Commonwealth*, *supra*. These cases teach that extreme emotional disturbance is not established by evidence of insanity or mental illness, but require a showing of some dramatic event which creates a temporary emotional disturbance as opposed to a more generalized mental derangement. The excluded evidence did not create a reasonable inference of extreme emotional disturbance.

■ Appellant further contends that he was deprived of due process of law by the trial court's failure to instruct on first degree manslaughter because of the mitigating factor of extreme emotional disturbance. The evidence relied upon is appellant's use of cocaine and alcohol before the crime was committed and evidence of the effect of these substances on him. Evidence was presented that prior to commission of the crime appellant had been smoking cocaine and drinking beer and a psychologist testified that these drugs used in combination may disrupt the biochemical process and wipe out inhibitions.

As discussed hereinabove, the evidence presented was insufficient to establish any extreme emotional disturbance. Numerous cases from this Court demonstrate that merely suffering from a mental illness or substance abuse is insufficient to warrant instructing upon extreme emotional disturbance. *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980), *cert. denied*, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 824 (1981), *Henley v. Commonwealth*, Ky., 621 S.W.2d 906 (1981), and *Smith v. Commonwealth*, Ky., 737 S.W.2d 683 (1987). In *McClellan v. Commonwealth*, *supra*, this Court defined extreme emotional disturbance as follows:

"Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." 715 S.W.2d at 468–69.

There was no evidence that appellant acted under the influence of extreme emotional disturbance as defined in *McClellan* when he decided to kidnap, rob and murder the victim.

■ Appellant next contends he was unfairly prejudiced by the introduction of evidence that the gun used in commission of the crimes charged was one of 160 guns he had stolen from the Smith and Wesson Company and that he had stolen the car he was driving on the occasion of the crimes. On this issue we need say little more than to quote from Professor Lawson, *The Ken-*

*tucky Evidence Law Handbook*, 2nd Ed., § 2.20(B) as follows:

"Evidence that reveals an independent criminal act by an accused is admissible if the independent crime is so interwoven with evidence of the crime charged that its mention is both necessary and appropriate."

In *Smith v. Commonwealth*, Ky., 366 S.W.2d 902, 906 (1962), we said:

"... the rule (is) that all evidence which is pertinent to the issue and tends to prove the crime charged against the accused is admissible, although it may also approve or tend to prove the commission of other crimes by him or to establish collateral facts."

Appellant's theft of the gun used to commit the crimes charged and theft of the automobile to transport the victim to the point of the murder are so interwoven with the Commonwealth's proof as to render this evidence admissible despite the fact that it tended to prove collateral uncharged criminal conduct.

■ Next we consider whether the trial court erred in precluding appellant from presenting evidence bearing on the mentality of witness Donald Ray Jackson. While incarcerated appellant told fellow inmate Jackson that he had robbed and shot the victim. At trial Jackson was permitted to repeat appellant's statements. On cross-examination appellant sought to present evidence that Jackson had been a patient of a mental health organization, that Jackson often became intoxicated, that he had blackouts of a substantial duration and lives in a dreamworld. Appellant contends this evidence should have been admitted as it has a bearing on Jackson's motive and bias and is otherwise relevant.

The trial court disallowed much of appellant's attempted cross-examination and precluded appellant from presenting evidence of Jackson's general mental condition. Appellant was invited, however, to cross-examine Jackson about his ability to recall events and relate those events to the jury. Appellant was also permitted to cross-examine Jackson about his criminal charges and guilty pleas. In *Commonwealth v.*

*Huber*, Ky., 711 S.W.2d 490 (1986), this Court held that the prior mental treatment of a witness is not relevant as to credibility unless it can be demonstrated that there was a mental deficiency at the time of the testimony or at the time of the matter about which the testimony was given. Psychiatric problems are not a proper subject for impeachment unless it can be shown that such problems relate to the credibility of the witness. *Wagner v. Commonwealth*, Ky., 581 S.W.2d 352 (1979), overruled on other grounds by *Estep v. Commonwealth*, Ky., 663 S.W.2d 213 (1983), and *Mosley v. Commonwealth*, Ky., 420 S.W.2d 679 (1967), upon which appellant relies, are distinguishable from the instant case on the grounds that the witness in each of those cases was then undergoing treatment. In *Wagner* the witness was then receiving shock treatments which affected her memory and in *Mosley* the witness was under treatment for schizophrenia which produced sexual fantasies.

There was no error in the trial court's exclusion of this evidence.

■ We now turn to appellant's attack upon his conviction for kidnapping and his claim that KRS 509.050, the so-called "kidnap" exemption statute, applies.

As earlier stated, the victim voluntarily placed himself inside appellant's car en route to a service station. After purchasing gasoline, the victim voluntarily returned to the car on appellant's offer of help. In the course of the return trip, appellant diverted his course and pulled a gun on the victim. The victim was then robbed of his money, forced to remove his clothing and ordered into a ditch along the highway where the murder took place.

In *Griffin v. Commonwealth*, Ky., 576 S.W.2d 514 (1978), this Court developed a three-part test to determine whether the kidnap exemption statute applies. First, the underlying criminal purpose must be the commission of a crime defined outside of KRS 509. Appellant met this requirement. Clearly, his purpose was to rob the victim. Second, for the exemption statute to apply, it must be determined whether the interference with the victim's liberty

occurred immediately with or incidental to the commission of the underlying intended crime. Appellant probably satisfied this requirement. Finally, it must be determined whether the interference with the victim's liberty exceeds that which is ordinarily incident to the commission of the underlying crime. On this point appellant's argument falls flat. To accomplish the crime of robbery, it was not necessary for appellant to divert his course of travel and force the victim into a ditch and take his life. In a case factually similar to the case at bar, *Moore v. Commonwealth*, Ky., 634 S.W.2d 426, 434 (1982), this Court held:

> "the murder of the victim clearly exceeds the deprivation of liberty ordinarily incident to a robbery."

Appellant's motive in murdering the victim appears to have been to prevent any possibility of subsequent identification.

 Appellant next contends the trial court erred to his prejudice in refusing to rule on his motion *in limine*. At the outset, it should be noted that this Court has never held that a trial court is required to rule on a motion *in limine*. Whether such a ruling should be issued is a matter which rests within the sound discretion of the trial court.

 The matter upon which the pretrial ruling was sought concerned the admissibility of evidence that appellant went to Memphis with two witnesses to trade 150 guns for 2 ounces of cocaine and $300. The witnesses in question testified before the jury that appellant made statements to them in which he admitted robbing and killing the victim. Outside the presence and hearing of the jury, it was disclosed that these witnesses had received favorable treatment with respect to pending criminal charges in the State of Mississippi in exchange for their cooperation with the police in the case against appellant. It was appellant's desire to cross-examine these witnesses as to the favorable treatment in an effort to show their motive and bias. But appellant declined to do so for fear that the trial court would admit evidence from these same witnesses as to his trade of guns for cocaine and money.

The trial court held that without hearing the actual testimony, it did not believe the relevance of the potential rebuttal evidence, i.e. guns for cocaine and money, could be determined. Thus, a ruling on the admissibility of this evidence was reserved until the evidence was offered. To avoid the possibility of a trial court ruling that the rebuttal evidence would be admissible, appellant did not cross-examine the Commonwealth's witnesses as to the favorable treatment they received in exchange for their cooperation.

In *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 (1988), this Court decided a similar case and held that the possibility of adverse testimony on rebuttal and the necessity of foregoing some cross-examination did not amount to a denial of a party's right of confrontation. The fact that a particular line of cross-examination may render testimony admissible which would be otherwise inadmissible resulting in the practical necessity to forego such cross-examination does not deprive a defendant of a fair trial.

On this issue we conclude as we began. Whether to rule on a motion *in limine* is a matter which rests within the sound discretion of the trial court.

 Appellant next contends the trial court erred in refusing to give an instruction on the defense of intoxication. The evidence presented demonstrated that appellant had been smoking cocaine and drinking beer prior to commission of the crimes. Appellant's female companions placed the time of this drug use at between one-half hour and one and one-half hours before picking up the victim. The evidence also showed that appellant was able to operate his motor vehicle in a satisfactory manner.

While intoxication may be a defense in a criminal case, it is such only if there is evidence sufficient to support a doubt that the defendant knew what he was doing. In *Jewell v. Commonwealth*, Ky., 549 S.W.2d 807 (1977), overruled on other grounds by *Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981), it was held that in order to

justify such an instruction there must be evidence not only that the defendant was drunk, but that he was so drunk that he did not know what he was doing. *Meadows v. Commonwealth*, Ky., 550 S.W.2d 511 (1977).

The evidence presented was wholly insufficient to establish an entitlement to an intoxication instruction. At most, the evidence showed appellant's casual drug and alcohol use prior to the time the crimes were committed, but it also showed that he was functioning normally.

Appellant also contends the trial court violated KRS 504.100(1) by failing to appoint a psychologist or psychiatrist to examine him or report on his mental condition when he attempted suicide after the jury's verdict in the guilt phase of the trial.

In the evening after the jury's verdict was rendered in the guilt phase, appellant ingested an overdose of prescribed medication. It is contended that this was a suicide attempt. Following this incident, the trial court heard testimony from appellant's expert, Dr. Johnson, registered nurse Carol Locke, psychologist Gary Long, and psychiatrist Dr. Feldman, all of whom saw appellant after the alleged suicide attempt. On the basis of this testimony, the trial court determined that appellant was competent to continue to stand trial. Upon the evidence presented, we are unable to say that the trial court's ruling was clearly erroneous or contrary to its sound discretion. The trial court correctly observed that any defendant convicted of murder would likely be depressed.

In his final claim for reversal, appellant contends the trial court erred in using the term "recommend" with reference to the verdict of the jury. First we note that this case was submitted to the jury under instructions which authorized imposition of the death penalty, but the jury did not render such a verdict. Our denunciation of the term "recommend" in *Tamme v. Commonwealth*, Ky., 759 S.W.2d 51 (1988), and *Grooms v. Commonwealth*, Ky., 756 S.W.2d 131 (1988), was because jurors might be led to believe the final decision would be made elsewhere;

that the jury might not fully appreciate the significance of its decision to impose the death penalty. Moreover, this case was tried before our decision in *Tamme* became final. Only then did we prohibit use of the word "recommend" in the course of a criminal jury trial. Finally, the record does not disclose any effort by the Commonwealth to exploit the term "recommend" in an effort to minimize the responsibility imposed upon the jury. Indeed, during summation, the Commonwealth referred to the jury's function as "fixing" punishment.

In view of the state of the law at the time this case was tried, there was no error in the use of the word "recommend." Moreover, we are fully persuaded there is no substantial possibility the result would have been different but for the use of the word "recommend." Accordingly, if use of this term was error, it was harmless.

Having fully reviewed appellant's claims of error and finding no grounds for reversal, the judgment of the Jefferson Circuit Court is affirmed.

All concur.