Bennie L. GAMBLE, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1999–SC–0567–MR.

Supreme Court of Kentucky.

Feb. 21, 2002.

Shelly R. Fears, Asst. Public Advocate, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Atty. Gen., John E. Zak, Asst. Atty. Gen., Frankfort, for Appellee.

STUMBO, Justice.

Appellant, Bennie L. Gamble, Jr., was convicted in the McCracken Circuit Court of murder and first-degree robbery and sentenced to life in prison. Gamble appeals his conviction, alleging that: (1) peremptory strikes were improperly used by the prosecution during jury selection to exclude African–Americans from the jury, violating Appellant's right to Equal Protection; (2) the trial court committed reversible error in refusing to excuse two jurors with racist views for cause, compelling Appellant to exercise peremptory challenges on incompetent jurors; (3) Appellant's motion to be tried separately from his co-defendant was improperly denied; and (4) the trial court improperly refused to grant a mistrial following prejudicial testimony that Appellant had terminated his interview with police, prejudicial comments and cross-examination by co-defendant Bradley's attorneys, and misconduct by the trial judge during Appellant's testimony. Because we find the trial court erred in its ruling as to the second issue, we reverse and remand for a new trial.

## FACTS

Appellant, Chasidy Bradley and Barbara Neill were arrested for the September 23, 1997 robbery and murder of William Tolbert. While Appellant maintained his innocence, Bradley and Neill gave statements about their involvement, as well as Appellant's, in the crimes. Neill eventually pled guilty to the murder and robbery and testified against Bradley and Appellant in exchange for a recommended sentence of twenty-five (25) years in prison. Bradley and Gamble were tried together.

Neill essentially testified that she and Bradley had originally planned to kill Tolbert for his money. They were unable to go through with their plan alone and re-

cruited Appellant, who was living with Bradley, to help. Neill indicated that the women, who knew Tolbert, went to his house and distracted him by performing oral sex on him. While they were so engaged, one of the women slipped to the back of the house and let Appellant in the back door. Neill indicated that, after an attempt to cut Tolbert's throat failed, Appellant, with Neill's assistance, strangled him with a telephone cord and belt.

## COMMONWEALTH'S USE OF PEREMPTORY STRIKES

Appellant is African–American, while the victim was Caucasian, as are Bradley and Neill. Of the thirty-three (33) prospective jurors called in Appellant and Bradley's case, four were African–American. The Commonwealth used its peremptory challenges to strike three of the four African–Americans from the jury and Appellant challenged the Commonwealth's use of peremptory strikes as racially motivated. Before the jury was sworn, the trial judge overruled Appellant's objection to the Commonwealth's use of its peremptory challenges.

The Commonwealth indicated at the bench conference that prospective Juror # 52 had been stricken because the prosecutor had tried a murder case against her son, who was ultimately convicted of murder. Prospective Juror # 40 was stricken because her brother had successfully sued, and recovered a judgment against a police officer, and/or department, for false arrest. Finally, the Commonwealth asserted that prospective Juror # 66 was stricken because she had been approached by a witness in the case and had spoken about the case, and she had recently been stopped by Paducah police and charged with a series of traffic offenses. Appellant asserted then, and now, that those reasons were merely pretextual, noting that none

of these issues were raised by the Commonwealth during voir dire. Also, prospective Juror # 40 was questioned about her ability to be fair if she served on the jury and she repeatedly indicated that she could be fair.

■ The Commonwealth argues that this issue has not been properly preserved, as the objection was not raised until after the prospective jurors who had been stricken had been discharged and had left the courtroom. This assertion is without merit. The Commonwealth cites *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988), wherein a *Batson* challenge was held to be untimely where defense counsel specifically stated that he had no objection to the jury, the prospective jurors who were not chosen for the jury had been discharged, and the jury had been sworn. In the case at bar, the names of the fourteen (14) jurors were called, immediately after which the trial judge began to thank the potential jurors who were not selected and to discuss his own experiences as a juror. Appellant raised the objection as soon as was practicable, under the circumstances, and before the jury had been sworn. *Washington v. Commonwealth*, Ky., 34 S.W.3d 376 (2000). Thus, the objection was timely and the issue was properly preserved for appeal.

■ In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) the United States Supreme Court outlined a three-step process for evaluating claims that prospective jurors were stricken on the basis of race in violation of the Equal Protection Clause. "First, the defendant must make a prima facie showing of racial bias for the peremptory challenge. Second, if the requisite showing has been made, the burden shifts to the Commonwealth to articulate 'clear and reasonably specific' race-neutral reasons for its use of a peremptory challenge. While the rea-

sons need not rise to the level justifying a challenge for cause, 'self-serving explanations based on intuition or disclaimer of discriminatory motive' are insufficient. *Stanford v. Commonwealth*, Ky., 793 S.W.2d 112, 114 (1990) (quoting *Batson, supra*, at 98, 106 S.Ct. 1712). Finally, the trial court has the duty to evaluate the credibility of the proffered reasons and determine if the defendant has established purposeful discrimination." *Washington v. Commonwealth*, Ky., 34 S.W.3d 376 (2000). "A judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact. In order to permit the questioned challenge, the trial judge must conclude that the proffered reasons are, first, neutral and reasonable, and second, not a pretext. These two requirements are necessary to demonstrate 'clear and reasonably specific ... legitimate reasons.'" *Wright v. State*, 586 So.2d 1024 (Fla.1991). (quoting *State v. Slappy*, 522 So.2d 18 (Fla.1987)).

With respect to the first prong of the *Batson* test, this Court has found that once the Commonwealth has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate issue of discrimination, the preliminary issue of whether the defendant has made a prima facie showing is moot. *Commonwealth v. Snodgrass*, Ky., 831 S.W.2d 176 (1992). (citing *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). Thus, the first prong of *Batson* has been rendered moot by the circumstances herein.

■ The Commonwealth has clearly met the second prong of the *Batson* three-prong test. The Commonwealth articulated "clear and reasonably specific" race-neutral reasons for its use of the peremptory challenges, in that one juror's son had been prosecuted by the prosecutor in the

case sub judice, one juror had talked with a witness in the trial, and, less impressively, had recently received a number of traffic citations from the Paducah police, and that the third juror stricken had a close relative who had filed suit for false arrest and had recovered against the police officer and/or department. As to Appellant's assertion that the Commonwealth should have inquired into these incidents with each potential juror, this Court has previously held that such inquiry is not required before exercising a peremptory challenge. *Commonwealth v. Snodgrass*, Ky., 831 S.W.2d 176 (1992).

 In the third prong of the *Batson* test, the trial judge weighed the evidence before him and decided that Appellant had not shown purposeful discrimination in the Commonwealth's use of its peremptory challenges. The trial court is afforded great discretion in making its determination under *Batson*. "The trial court may accept at face value the explanation given by the prosecutor depending upon the demeanor and credibility of the prosecutor." *Stanford v. Commonwealth*, 793 S.W.2d 112 (1990). The trial judge's decision is not clearly erroneous and thus will not be set aside. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), *Commonwealth v. Snodgrass*, Ky., 831 S.W.2d 176 (1992).

## TRIAL COURT'S REFUSAL TO EXCUSE JURORS WITH RACIST VIEWS

 Upon individual questioning, Juror # 170 indicated that he had been assaulted at gunpoint by an African–American in Tennessee. When asked if he had ever used racial terms to describe this incident, Juror # 170 stated that he had used the phrase "some nigger robbed me at gunpoint."

During the questioning of Juror # 54, he indicated that he had moved from his prior neighborhood because he had a young daughter and he "never felt safe" because there were "black guys" always around their house. He indicated a strong opposition to inter-racial relationships, stating that he generally thought of people involved in such relationships as low class, and of low class people as more likely to commit crime. Juror # 54 stated that he could not deny his prejudices and that upon entering the courtroom he automatically assumed Gamble to be the defendant because he "figured a black had to be the person accused." Both Juror # 170 and Juror # 54 indicated that they could base their decision solely on the evidence presented at trial.

Neither Juror # 170 nor Juror # 54 served on Appellant's jury. According to Appellant, the trial court refused to exclude these jurors for cause and Appellant exercised peremptory challenges in order to avoid having them serve on the jury. However, Appellee points out, and the record reflects, that the Court, in fact, eventually struck Juror # 170, though how that came about is unclear from the record.

 Appellee further notes that Gamble did not allege that he used all of his peremptory challenges, even having stricken Juror # 54. Thus, the Commonwealth argues that the issue is not properly preserved for appeal, citing *Derossett v. Commonwealth*, Ky., 867 S.W.2d 195, 197 (1993); and *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872 (1992). "The error attributed to the failure to excuse either or both jurors for cause is not properly postured for further review insofar as neither juror sat, nor has prejudice been shown as the record does not disclose that appellant exhausted all peremptory challenges as to these venirepersons." *Derossett* at 197.

CR 9.40 provides that, for the charge of a felony offense, the defendant or defendants jointly are entitled to eight (8) peremptory challenges. If one (1) or two (2) additional jurors are called, each defendant gets an additional peremptory challenge, and where more than one (1) defendant is being tried, each defendant is entitled to at least one additional peremptory challenge to be exercised independently of any other defendant. While a motion was made for additional challenges, the record does not indicate that the motion was granted.

The record reveals that Appellant and Bradley struck eight (8) jurors jointly, and Appellant struck an additional two jurors independently. Thus it would appear that Appellant did, in fact, use all of his peremptory challenges.

 While it is true that the decision of whether a juror should be excused for cause is a matter within the sound discretion of the trial court, *Mills v. Commonwealth*, Ky., 996 S.W.2d 473 (1999), *Foley v. Commonwealth*, Ky., 953 S.W.2d 924 (1997), the exchange between Juror # 54, counsel for the Appellant and Ms. Bradley, and the trial judge, is very disturbing. While Juror # 54 was hesitant to label himself a bigot, and clearly embarrassed when voicing his views on race, he did state that: (1) he was racially biased; (2) he left his neighborhood because young black men were hanging around in the area; (3) when he walked into the courtroom he assumed that Appellant was the accused because of the color of his skin; (4) and he was opposed to, in fact, offended by, inter-racial relationships. Juror # 54 specifically stated that he felt that people who were involved in such relationships were low class, and that low class people were more likely to commit crimes. Juror # 54 stated that it was "hard to say" how the presence of an inter-racial relationship would affect his decision in this case.

While Juror # 54 did eventually state that he could be fair and reach a decision on the evidence, every indication was that he holds racist ideas which affected his view of Appellant before the first piece of evidence was presented to him. In short, he had indicated a bias so strong that he could not be rehabilitated. As stated in *Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713, 718 (1991), further questions do "not provide a device to 'rehabilitate' a juror who should be considered disqualified by his personal knowledge or his past experience, or his attitude as expressed on voir dire." "This juror had indicated a bias so strong that the prosecutor's questions did not serve to remove the disqualification." *Thomas v. Commonwealth*, Ky., 864 S.W.2d 252, 255 (1993). As this Court stated in *Montgomery:*

One of the myths arising from the folklore surrounding jury selection is that a juror who has made answers which would otherwise disqualify him by reason of bias or prejudice may be rehabilitated by being asked whether he can put aside his personal knowledge, his views, or those sentiments and opinions he has already, and decide the case instead based solely on the evidence presented in court and the court's instruction. This has come to be referred to in the vernacular as the "magic question." But, as Chief Justice Hughes observed in *United States v. Wood*, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936), "impartiality is not a technical conception. It is a state of mind." A trial court's decision whether a juror possessed "this mental attitude of appropriate indifference" must be reviewed in the totality of circumstances. It is not limited to the juror's response to a "magic question." In this case, the record is replete with circumstances establishing an inference of bias or prejudice on the part of jurors so pervasive that the jurors were be-

yond being rehabilitated as appropriate jurors by affirmative answer to such a question, however well intentioned.

*Id.* at 718. For Appellant's challenge to succeed, it is not necessary that an unqualified juror actually sat on the jury. As the Court noted in *Thomas v. Commonwealth,* Ky., 864 S.W.2d 252, 259 (1993), it has always been the law in Kentucky "that prejudice is presumed, and the defendant is entitled to a reversal in those cases where a defendant is forced to exhaust his peremptory challenges against prospective jurors who should have been excused for cause." All that is required is that "[a] party must exercise all of his peremptory challenges in order to sustain a claim of prejudice due to the failure of the court to grant a requested challenge for cause." *Thomas,* citing Abramson, Kentucky Practice, (Criminal Rules) Vol. 9, Sec. 25.50 (1987).

Inasmuch as our decision on this issue is dispositive, the additional issues raised by Appellant on appeal, which are unlikely to arise at a second trial, will not be addressed further.

LAMBERT, C.J.; COOPER and JOHNSTONE, JJ., concur.

KELLER, J., dissents by separate opinion, with GRAVES and WINTERSHEIMER, JJ., joining that dissent.

KELLER, Justice, dissenting.

I wholeheartedly agree with the majority that the trial court erred when it found Juror # 54 qualified to sit as a juror and overruled Appellant's motion to excuse Juror # 54 for cause. Unlike the majority, which bases its reversal on the premise that the trial court's error "forced" Appellant to exercise a peremptory challenge to remove Juror # 54, however, I believe the most important—and ultimately, in my view, dispositive—fact in this case is that Juror # 54 *did not sit* on the jury that determined Appellant's guilt. By exercising a peremptory challenge to remove Juror # 54, Appellant "did not lose a peremptory challenge. Rather, he used the challenge in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury."[1] Here, a fair and impartial jury deliberated the evidence and found Appellant guilty. Accordingly, I do not believe that the trial court's error affected Appellant's substantial rights,[2] and I would affirm the judgment of the McCracken Circuit Court.

In my dissenting opinion in *Stopher v. Commonwealth,*[3] I expressed my opinion that this Court should overrule *Thomas v. Commonwealth,*[4] reject the notion that automatic reversible error exists whenever a defendant exercises a peremptory challenge to remove a juror whom the trial court erroneously failed to remove for cause, and subject such allegations of error to harmless error review. Although, at that time, I expressed my intention to follow this Court's precedent until a majority of the Court elects to adopt my view,[5] I now realize that I cannot fulfill my oath of office by closing my eyes, reversing a jury verdict that resulted from a fair trial, and

---

1. *United States v. Martinez-Salazar,* 528 U.S. 304, 315–316, 120 S.Ct. 774, 781–2, 145 L.Ed.2d 792 (2000).

2. RCr 9.24

3. Ky., 57 S.W.3d 787, 813–818 (2001) (Keller, J., dissenting).

4. Ky., 864 S.W.2d 252 (1993), cert. denied, 510 U.S. 1177, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994).

5. *Stopher v. Commonwealth, supra* note 3 at 808.

remanding the case for *another* fair trial. As even more courts have embraced the view that errors of this type do not require automatic reversal,[6] I again suggest that this Court "reexamine its decisional law concerning peremptory challenges used to excuse jurors whom the trial court has erroneously failed to excuse for cause . . . [and] bring Kentucky law in accordance with the prevailing federal jurisprudence."[7]

Because I find no reversible error in either the issue addressed in the majority opinion or the other issues Appellant raises, I would affirm the judgment of the McCracken Circuit Court.

GRAVES and WINTERSHEIMER, JJ., join this dissenting opinion.

---

**6.** *See State v. Lindell,* 245 Wis.2d 689, 629 N.W.2d 223 (2001); *State v. Fire,* 145 Wash.2d 152, 34 P.3d 1218 (2001).

**7.** *Stopher v. Commonwealth, supra* note 3 at 817.