**Joseph Manuel RODRIGUEZ,
Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 2001–SC–0345–MR.

Supreme Court of Kentucky.

June 12, 2003.

Donna L. Boyce, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General of Kentucky, Carlton S. Shier, IV, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice JOHNSTONE.

Appellant, Joseph Manuel Rodriguez, was convicted of first-degree robbery and sentenced to twenty years' imprisonment. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). On appeal, Rodriguez raises three issues: (1) the police employed an unconstitutional identification procedure, (2) the trial court erred in admitting evidence that he stole a truck and fled the scene after the robbery, and (3) the trial court erred in denying his motion for a new trial on grounds that a juror failed to answer a question that would have caused the juror's disqualification. For the reasons stated below, we affirm the judgment of the Bullitt Circuit Court.

## I. Facts

Rodriguez was convicted of robbing a Bullitt County Save–A–Step Food Market on February 24, 2000. Crystal Smith and Debbie Carter were working at the Save–A–Step at the time of the offense. According to Smith, the robbery occurred a few minutes before the store was scheduled to close. The robbery itself was a fairly conventional and, sadly, an all too common event. A man walked into the store, produced a weapon, and demanded money on the threat of death. Fortunately, no one was hurt on this occasion. After taking what cash he could, the man fled the store. Smith then telephoned the police, who responded within minutes. On the phone, Smith described the robber as wearing blue jeans, tennis shoes, glasses, and a white polo shirt with green stripes and

collar underneath a green, hooded sweatshirt.

Officer Steve Cox was the first officer to respond to the call. After confirming that no one was injured at the Save–A–Step, he began searching the area for the suspect. Within thirty minutes, he spotted a man, who fit the suspect's description, walk out of a drainage ditch and enter a Super America convenience store, which was within 400 feet of the Save–A–Step. Upon observing the man enter the store, Cox called for backup. State Trooper Darryl Paul arrived shortly thereafter. Cox and Paul walked toward the Super America together. As they were approaching, the suspect ran out of the Super America and stole a pickup truck that was parked in front of the store with its doors open and its motor running. The suspect left the parking lot in a hurry, almost hitting Cox in the process.

A vehicle chase ensued and concluded when the pickup truck turned down a dead-end alley. A foot chase then began when the suspect fled the truck and ran into a wooded area. Rodriguez was apprehended by two Jefferson County police officers a few minutes later. These officers placed Rodriguez into Paul's custody, after Paul identified Rodriguez as the suspect who had stolen the pickup truck. Paul took Rodriguez to the Save–A–Step for identification by Smith and Carter, both of whom positively identified Rodriguez as the person who had robbed them. They repeated these identifications with equal force at Rodriguez's trial.

## II. Discussion

### Identifications

Rodriguez first argues that the trial court erred in denying his motion to suppress Smith's and Carter's identifications of him as the person who robbed them on grounds that their initial identifications

were the unlawful result of an unduly suggestive, single-person showup. We disagree.

▇▇▇ A single-person-showup identification is inherently suggestive, which requires the court to assess the totality of the circumstances surrounding the identification to consider the likelihood of an "irreparable misidentification" by the witness. *Merriweather v. Commonwealth,* Ky., 99 S.W.3d 448, 451 (2003), citing *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The *Neil* Court set forth five factors to be considered when making this assessment: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Id.* at 199–200, 93 S.Ct. at 382, 34 L.Ed.2d at 411. Applying these factors to the case at bar, we conclude that Smith's and Carter's identifications of Rodriguez were sufficiently reliable.

Both Smith and Carter had good opportunities to view the robber. The store was well lit and the robber was inside the store for five to ten minutes. Smith and Carter were robbed at gunpoint, which focused their attention on the events and circumstances surrounding the robbery. *See United States v. Burbridge,* 252 F.3d 775, 780–81 (5th Cir.2001) (open armed robbery); *Levasseur v. Pepe,* 70 F.3d 187, 195 (1st Cir.1995) (witness's attention during traumatic experience is presumed to be acute). Smith's and Carter's descriptions of the robber were very similar, which supports a finding that the identifications were accurate. *United States v. Bredy,*

209 F.3d 1193, 1196 (10th Cir.2000), *cert. denied* 531 U.S. 897, 121 S.Ct. 229, 148 L.Ed.2d 164 (2000). Additionally, each remembered specific details as to what the robber was wearing. *Id.* Both Smith and Carter were certain of their identifications of Rodriguez at the time of the showup. Finally, only approximately two hours elapsed between the robbery and the showup; thus, Smith's and Carter's memories were relatively fresh. *See Burbridge,* 252 F.3d at 781. Because all five of the *Neil v. Biggers'* factors weigh in favor of the reliability of the identifications, we hold that the trial court did not err in denying Rodriguez's motion to suppress Smith's and Carter's identifications of him.

### The Stolen Truck

Next, Rodriguez argues that the trial court erred in admitting evidence of the stolen truck and the subsequent chase that led to his arrest.[1] Again, we disagree.

▇▇▇ Rodriguez moved in limine to suppress this evidence on grounds that it was excluded by KRE 404(b) as inadmissible prior-bad-act evidence. The Commonwealth responded that the theft of the truck and subsequent chase were inextricably entwined with the other evidence of the case and, thus, was admissible under the second exception to the exclusion of evidence under KRE 404(b). The trial court denied Rodriguez's motion on grounds that evidence of flight is admissible to prove guilt.

It has long been held that proof of flight to elude capture or to prevent discovery is admissible because "flight is always some evidence of a sense of guilt." *Hord v. Commonwealth,* 227 Ky. 439, 13 S.W.2d 244, 246 (1928); *see also, e.g., Chumbler v.*

---

**1.** Rodriguez was not tried on these charges in Bullitt County because the theft, chase, and capture occurred in Jefferson County.

*Commonwealth,* Ky., 905 S.W.2d 488, 496 (1995); *Hamblin v. Commonwealth,* Ky., 500 S.W.2d 73, 74 (1973). This common-law rule is based on the inference that the guilty run away but the innocent remain, which echoes more eloquent language from the Bible: "The wicked flee where no man pursueth; but the righteous are bold as a lion." *Proverbs* 28:1. Despite its long lineage, we have not yet addressed whether the common-law rule survives the adoption of the Kentucky Rules of Evidence (KRE). *See Garrett v. Commonwealth,* Ky., 48 S.W.3d 6, 10–11 (2001) (holding the common-law distinction between treating and examining physicians was eliminated by the adoption of KRE 803(4)). We do so now and begin with relevancy.

■ KRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." By definition, the common-law rule regarding the admissibility of evidence of flight is a rule of relevancy. That is, evidence of flight is admissible because it has a tendency to make the existence of the defendant's guilt more probable: a guilty person probably would act like a guilty person. But here, Rodriguez seems to argue that evidence of his flight relates to the theft of the truck and not to the robbery of the Save–A–Step. If true, the evidence should have been excluded under KRE 402. Rodriguez, however, fails to recognize the broader implications of the evidence.

Rodriguez stole the truck from a convenience store that was about a block away from the Save–A–Step, which had been robbed some thirty minutes before. Thus, the theft of the truck was both spatially and temporally close to the crime charged. More importantly, Rodriguez stole the truck in the plain view of the two approaching police officers. It can be reasonably inferred from the evidence that, from his vantage point in the store, Rodriguez saw the two police officers closing in on his position and that he stole the truck to avoid the officers and not because he desired the truck itself. In other words, there was evidence to infer that Rodriguez stole the truck as a means to escape arrest for the robbery, rather than as an end in itself. Thus, the evidence was relevant and admissible subject to the balancing test of KRE 403. Consequently, all that is left is Rodriguez's argument that the evidence should have been excluded under KRE 404(b).

■ KRE 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Under this rule, the theft of the truck and subsequent attempt to escape were not admissible to show that, because Rodriguez stole the truck, he also likely robbed the Save–A–Step. But as shown above in the relevancy analysis, that is not why the trial court admitted the evidence. It was *admitted for another purpose.*

■ Under KRE 404(b)(1), evidence of other crimes, wrongs, or acts is not excluded by the rule "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This list of other purposes is "illustrative rather than exhaustive." *Colwell v. Commonwealth,* Ky., 37 S.W.3d 721, 725 (2000). Thus, we hold that the trial court properly admitted the theft of the truck and Rodriguez's subsequent attempt to elude the police because it was evidence of flight from the Save–A–Step robbery and, hence, it was offered for "some other purpose," *i.e.,* an expression of a sense of

guilt, within the meaning of KRE 404(b)(1).

### Juror Disqualification

During voir dire, one of the prospective jurors, a Mr. Jones, volunteered that he had heard about the case from a next-door neighbor, John Casey, whose truck was stolen from the Super America on the night that the Save–A–Step was robbed. Juror Jones stated that Casey was a good neighbor and that he would be inclined to believe him. Further, Juror Jones stated that he would tend to believe that Rodriguez committed the robbery if Rodriguez was shown to be the person who stole the truck. At this point, defense counsel moved to strike Juror Jones for cause. The trial court apparently did not rule on the motion at the time it was made.

Sometime later, another Juror, a Mr. Fawbush, approached the bench and told the trial judge that he had heard Juror Jones state affirmatively that Rodriguez stole Casey's truck. Juror Fawbush admitted that, because of this knowledge, "I can't help but think that he (Rodriguez) stole the truck." Based on this revelation, defense counsel moved for a mistrial on grounds that the entire jury panel had been tainted by Juror Jones's statements. The trial court denied the motion, but stated its intent to generally question the entire panel to determine which jurors had overheard Juror Jones's comments. The trial court then struck all jurors who volunteered that they had heard the comments.

After the conclusion of the trial, defense counsel discovered that one of the jurors on the venire, a Ms. Ernst, had heard Juror Jones's comments but failed to reveal this in response to the trial court's direct questions on the subject. Rodriguez relied on this new information to move for a new trial. In the hearing on the motion, defense counsel argued that Ms. Ernst should have been removed for cause. Further, defense counsel argued that because Rodriguez had to use a peremptory challenge to remove Ms. Ernst and because Rodriguez exhausted all of his peremptory challenges, a new trial was required under the law. The trial court agreed with defense counsel's statement of the law, but disagreed with the factual premise upon which it was based. Specifically, the trial court concluded that Rodriguez failed to demonstrate that Ms. Ernst should have been struck for cause.

At the new trial hearing, Ms. Ernst explained why she did not respond to the trial court's questions regarding whether she had heard Juror Jones's comments:

> Because I didn't think nothing of it. I mean, honestly, I didn't think nothing of it. I wasn't taking anybody's word for nothing.... To me, I didn't know if ... he was telling the truth or not. I don't know him (Juror Jones). So I didn't take what he said—you know, I don't know. I just ... don't know why I didn't (answer the trial court's questions).

Based on this and other testimony, the trial court denied Rodriguez's motion for a new trial.

The trial court explained that its exclusion of all jurors who had heard Juror Jones's comments was cautionary. Had the Commonwealth or defense challenged this decision, the trial court stated that it would have conducted a more searching inquiry into whether there was cause to dismiss these jurors. Because no such challenge was made, no inquiry was made. The trial court reasoned that the motion for a new trial now necessitated this inquiry as to Ms. Ernst. After conducting the inquiry, the trial court concluded that it would not have excluded Ms. Ernst for cause based on her testimony that (1) she

placed no credence in Juror Jones's statements; and (2) that, if she had been selected to serve as a juror, she would have listened to the evidence before making a decision on the issue of Rodriguez's guilt.

 The "decision whether to excuse a juror for cause is a matter within the sound discretion of the trial court." *Furnish v. Commonwealth*, Ky., 95 S.W.3d 34, 44 (2002). The issue of juror bias remains a question of trial court discretion even after the jury is sworn. *Gould v. Charlton Co., Inc.*, Ky., 929 S.W.2d 734, 740 (1996). The question of jury bias is decided by examining whether the challenged juror can be impartial in light of the particular facts and circumstances connecting the juror to the case to be tried. *See Bowling v. Commonwealth*, Ky., 942 S.W.2d 293, 299 (1997), *cert. denied*, 522 U.S. 986, 118 S.Ct. 451, 139 L.Ed.2d 387 (1997). There are some cases where the relationship between the juror and the case to be tried is so close that bias must be presumed and the juror must be excluded regardless of any claims of non-bias. *See, e.g., Ward v. Commonwealth*, Ky., 695 S.W.2d 404, 407 (1985). But knowledge of the case by itself does not meet this criteria. *See Scruggs v. Commonwealth*, Ky., 566 S.W.2d 405 (1978), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978) (juror heard a witness for the Commonwealth discussing the case prior to trial).

Upon careful review of the record, we cannot say that the trial court abused its discretion in determining that Ms. Ernst could be impartial. Therefore, we hold that there was no error in denying Rodriguez's motion for a new trial.

For the reasons set forth above, we affirm the judgment of the Bullitt Circuit Court.

COOPER, GRAVES, KELLER, and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent.

Dissenting Opinion by Justice STUMBO.

Respectfully, I must dissent from the majority's opinion because I believe Appellant is entitled to a new trial due to the failure of juror Ernst to respond truthfully to a question that would have resulted in her dismissal for cause by the trial court.

Since Appellant was compelled to use one of his peremptory challenges against Ernst, when she should have been excused for cause, he should be granted a new trial. Appellant quotes from a recent opinion of this Court, wherein it states: "[I]t has always been the law in Kentucky 'that prejudice is presumed, and the defendant is entitled to a reversal in those cases where a defendant is forced to exhaust his peremptory challenges against prospective jurors who should have been excused for cause.'" *Gamble v. Commonwealth*, Ky., 68 S.W.3d 367, 374 (2002) (quoting *Thomas v. Commonwealth*, Ky., 864 S.W.2d 252, 259 (1993)).

Without question, Ernst should not have remained silent when the trial judge questioned the jury panel regarding Jones' statement. If Ernst had appropriately responded, then she would have been struck for cause by the trial court. As noted in *Gamble, supra:* "All that is required is that '[a] party must exercise all of his peremptory challenges in order to sustain a claim of prejudice due to the failure of the court to grant a requested challenge for cause.'" I note that here the trial court excused for cause every other juror who acknowledged hearing Jones' statement. None were asked whether they believed Jones' statement prior to the court's determination that they should be

struck for cause. The juror withheld information that would have resulted in her being stricken. Thus, there was reversible error and this matter should be retried.

LAMBERT, C.J., joins this dissent.