## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**JULY 28, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37843-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT GUTIERREZ, III, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Following a jury trial, Robert Gutierrez was found guilty of second degree assault, unlawful possession of a firearm, and felony harassment. On appeal, Mr. Gutierrez requests resentencing because his offender score included prior convictions for controlled substances. In his statement of additional grounds (SAG), Mr. Gutierrez raises several issues, including juror bias and ineffective assistance of counsel. We asked for additional briefing on the juror bias issue. After considering additional briefing and reviewing the record, we hold that the trial court abused its discretion by failing to inquire further or excuse a juror who expressed actual ethnic bias during voir dire. Because we

No. 37843-8-III
*State v. Gutierrez*

reverse Mr. Gutierrez's convictions and remand for further proceedings, we decline to

address the other issues raised by Mr. Gutierrez and his attorney.

BACKGROUND

Mr. Gutierrez was charged with first degree robbery, second degree assault, and

first degree unlawful possession of a firearm. The information was amended to include a

fourth count of felony harassment against Moises Garcia. A jury found Mr. Gutierrez not

guilty of robbery but guilty of second degree assault, unlawful possession of a firearm,

and felony harassment.

In his opening brief, the only issue raised by Mr. Gutierrez's attorney, was a

challenge to his sentence under *Blake*.[1] Mr. Gutierrez also filed a SAG, raising numerous

other issues. The court requested additional briefing on one of those issues: whether,

during voir dire, a juror who was eventually seated on the jury panel, expressed actual

bias necessitating his removal under RCW 2.36.110.

During voir dire, the following exchange took place:

> [DEFENSE COUNSEL]: . . . Juror 16. Hi.
>
> How are you? I'm wishing that it wasn't a pandemic and I could do this the way I naturally do. I'd be getting a lot of feedback. And this is the most important part of the trial for us. I know everybody thinks it's the evidence. This is the most important part. If I don't get people who can be fair, it won't matter what the evidence says, so I'm a little frustrated. Thank you for being here.

---

[1] *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

2

No. 37843-8-III
*State v. Gutierrez*

> You've been listening . . .or you appear to be listening. What are your thoughts about this? Anything I need to know about you before we go into picking the jury?

> PROSPECTIVE JUROR NUMBER 16: I think I have been summoned maybe three times, not put on a jury. And I think the two [defendants in those cases] before . . . were Hispanics, but they were never asked if they were a U.S. citizen. And that concerns me.

> [DEFENSE COUNSEL]: And that—and if we don't—if we don't cover that during the trial will that be a problem for you?

> PROSPECTIVE JUROR NUMBER 16: I thought maybe it would be brought up.

> [DEFENSE COUNSEL]: Because it may not come up in this particular trial.

> PROSPECTIVE JUROR NUMBER 16: How about I ask now if he's a U.S. citizen?

> [DEFENSE COUNSEL]: Well, turns out you're not allowed to ask that question, which is why it doesn't come out in trial. The Judge is not allowed to ask that question. Counsel aren't allowed to ask that question. I don't think I'm allowed to ask that question.

> PROSPECTIVE JUROR NUMBER 16: Why is that?

> [DEFENSE COUNSEL]: I imagine it has to do with some people's—the implication of noncitizen means perhaps you're implicating yourself in a crime. And you have the privilege, not you and I, everybody in the country has the privilege not to implicate themselves in a crime. So if somebody were here illegally in saying so, they will have admitted to a crime. And it's a federal crime. So I think that that's why it is.[2] And that is such a serious protection that a judge can't ask that of a defendant.

---

[2] For clarification, the immigration status of a defendant or witness is generally irrelevant and not admissible unless it is an essential fact to the case or to show bias or prejudice. ER 413(a). The attorney's reference to the right to remain silent may have compounded juror 16's bias by suggesting that Mr. Gutierrez may have had something to hide.

3

No. 37843-8-III
*State v. Gutierrez*

There's a whole Supreme Court case on it. So that's my thought. So it will not come up here.

Is there a reason that that would give you pause in being fair to Mr. Gutierrez?

PROSPECTIVE JUROR NUMBER 16: If I didn't know then I would have—I guess no reason to question that, I guess, if he was a U.S. citizen or not. If he's not a U.S. citizen he's already guilty. He shouldn't be here.

[DEFENSE COUNSEL]: Well, fair enough. That's a good point. But you wouldn't be saying then if he's not a citizen, he's guilty of the charges here, the robbery, the assault, the possession of a gun, you wouldn't be saying that because that's wholly separate, right?

PROSPECTIVE JUROR NUMBER 16: Yes. Yeah. I mean, if I don't know—I just—that would be—that wouldn't be part of the—my answer for it. So, yeah.

[DEFENSE COUNSEL]: Thank you, juror 16.

Report of Proceedings (RP) at 165-68.

Defense counsel did not move to strike juror 16 for cause and did not exercise a peremptory challenge to remove juror 16. Nor did the trial court make any comments or suggest that juror 16 displayed bias and should be removed. Prospective juror 16 was seated on the jury that entered a verdict of not guilty to the charge of first degree robbery, and guilty verdicts on the charges of second degree assault, unlawful possession of a firearm, and felony harassment.

4

No. 37843-8-III
*State v. Gutierrez*

ANALYSIS

In his SAG, Mr. Gutierrez raises an issue of juror bias. He contends that during voir dire, potential juror 16 demonstrated actual bias, but was nevertheless seated as a juror and not removed by his attorney or the court.[3]

While this issue is being raised for the first time on appeal, we address it as a manifest constitutional error. RAP 2.5(a). A defendant has a constitutional right to an unbiased jury trial. *City of Cheney v. Grunewald*, 55 Wn. App. 807, 810, 780 P.2d 1332 (1989). "When a juror makes an unqualified statement expressing actual bias, seating the juror is a manifest constitutional error." *State v. Irby*, 187 Wn. App. 183, 188, 347 P.3d 1103 (2015). It is well established that seating a biased juror is never harmless and requires a new trial regardless of actual prejudice. *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 851, 456 P.3d 869 (2020), *review denied*, 195 Wn.2d 1025, 466 P.3d 772 (2020).

Although Mr. Gutierrez did not move to strike juror 16, a trial court must do so on its own motion where grounds for a challenge for cause are apparent in the record. *Id.* at 855 (citing RCW 2.36.110; CrR 6.4(c)(1)). Under RCW 2.36.110, "It shall be the duty of

---

[3] Mr. Gutierrez also raises an issue of ineffective assistance of counsel for failing to strike the juror, but his argument on this issue points to evidence outside the record (conversations between Mr. Gutierrez and his attorney). Because this is a direct appeal, we will not consider evidence outside the record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Mr. Gutierrez can raise these issues in a personal restraint petition. *Id*.

5

No. 37843-8-III
*State v. Gutierrez*

a judge to excuse from further jury service any juror, who in the opinion of the judge, has

manifested unfitness as a juror by reason of bias [or] prejudice." A juror demonstrates

actual bias when he exhibits "'a state of mind . . . in reference to the action, or to either

party, which satisfies the court that the challenged person cannot try the issue impartially

and without prejudice to the substantial rights of the party challenging.'" *Guevara Diaz*,

11 Wn. App. 2d at 855 (alteration in original) (quoting RCW 4.44.170(2)).

> Bias based on race and ethnicity may be explicit or implicit.
>
> Explicit racial bias is consciously held, although the biased person may not
> be willing to admit to having such bias if asked. *See Peña-Rodriguez* [*v.
> Colorado*], [___ U.S. ___, ]137 S. Ct.[ 855,] 869[, 197 L. Ed. 2d 107
> (2013)]. Implicit racial bias, however, primarily exists at an unconscious
> level, such that the biased person is unlikely to be aware that it even exists.
> This occurs because "[i]t is now socially unacceptable to be overtly racist.
> Yet we all live our lives with stereotypes that are ingrained and often
> unconscious, implicit biases that endure despite our best efforts to eliminate
> them." [*State v.* ]*Saintcalle*, 178 Wn.2d[ 34,] 46[, 309 P.3d 326 (2013)
> (plurality opinion), *abrogated in part on other grounds by City of Seattle v.
> Erikson*, 188 Wn.2d 721, 398 P.3d 1124 (2017)].

*State v. Berhe*, 193 Wn.2d 647, 663, 444 P.3d 1172 (2019) (fifth alteration in original).

Whether implicit or explicit, evidence of actual racial and ethnic bias[4] can be

subtle. For example, questions about a person's immigration status may appear to be

---

[4] Bias based on Hispanic or Latinx identity is referred to as ethnic bias. *Peña-Rodriguez*, 137 S. Ct. at 863.

No. 37843-8-III
*State v. Gutierrez*

ethnically neutral because a person can immigrate from Canada or Mexico. But "[e]ven though the concern regarding immigration status does not explicitly implicate race, our country has made Latin ethnicity a proxy for undocumented immigration status." Mikah K. Thompson, *Bias on Trial: Toward an Open Discussion of Racial Stereotypes in the Courtroom*, 5 MICH. ST. L. REV. 1243, 1305 (2018).

In this case, the comments by juror 16 expressed actual bias. Juror 16's comments demonstrated that he was operating under a false presumption that Hispanic and Latinx persons were not citizens, and if they were not citizens then they were guilty of a crime. The link in this juror's mind between ethnicity and citizenship (and presumably immigration status) is clear: "I think the two [defendants in those cases] before were Hispanics, but they were never asked if they were a U.S. citizen. And that concerns me." RP at 167. Likewise, juror 16 wanted to know if Mr. Gutierrez was a United States citizen.

The State contends that juror 16's comments do not reflect bias but rather were neutral questions about an irrelevant topic. The State suggests that with defense counsel's focus on racial and ethnic bias during voir dire, along with evidence of Mr. Gutierrez's active participation in jury selection, there is little chance that both would miss a potential juror expressing actual bias.

7

No. 37843-8-III
*State v. Gutierrez*

In *Behre*, our Supreme Court acknowledged the inherent challenge in determining whether a juror is influenced by implicit bias. 193 Wn.2d at 663. Implicit biases include "'stereotypes that are ingrained and often unconscious.'" *Id*. (quoting *Saintcalle*, 178 Wn.2d at 46). In order to address this difficulty, the Court adopted an objective standard: "The ultimate question for the court is whether an objective observer (one who is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have influenced jury verdicts in Washington State) could view race as a factor in the verdict." *Id*. at 665.

Applying this standard to the voir dire in this case, we believe that viewed objectively, juror 16's comments permit an inference of implicit ethnic bias. There is nothing in the record to suggest that citizenship or immigration status was relevant to the criminal charges before the court. Yet, juror 16's immediate fixation on and framing of this issue demonstrated his inclination to make it relevant. Notably, juror 16 did not express concern about the citizenship of anyone else in the room.

Having determined that juror 16's comments were evidence of ethnic bias against Mr. Gutierrez, we consider whether the trial court abused its discretion by failing to inquire further or excuse the juror sua sponte. We review a challenge to the judge's failure to exercise this oversight for abuse of discretion. *Guevara Diaz*, 11 Wn. App. 2d at 856. This deferential standard of review recognizes that a trial judge is in the best

8

No. 37843-8-III
*State v. Gutierrez*

position to determine a juror's ability to be fair and impartial. *Id.* Our review, on the other hand, is based on a written transcript which often fails to provide a complete picture of the proceedings below. While a transcript tells us what was said, words on paper do not convey the full meaning of communication. A transcript does not include the tone of a person's voice, facial expressions, or body language. We cannot decipher when a speaker emphasizes certain phrases or pauses to suggest irony or cynicism. *See State v. Lawler*, 194 Wn. App. 275, 287, 374 P.3d 278 (2016).

Additionally, judges in general should exercise caution before injecting themselves into the jury selection process because of the highly strategic nature of jury selection. *Id.* at 284. Indeed, while speaking with juror 16, defense counsel pointed out that jury selection is the most important part of the trial for him. RP at 165. Even where a juror suggests some (nonracial) bias, there may be legitimate, tactical reasons to keep that juror seated. *Lawler*, 194 Wn.2d at 285. "Whether to keep a prospective juror on the jury panel or whether to dismiss a juror often is based on the trial counsel's experience, intuition, strategy, and discretion." *Id.* at 285. We must balance this hands-off approach with our recommitment to the eradication of racial and ethnic bias in the justice system, even when this requires more proactive measures. The Supreme Court's recent decision in *Berhe* provides guidance.

9

No. 37843-8-III
*State v. Gutierrez*

In *Berhe*, the court was faced with evidence of juror bias after the verdict was read. While acknowledging the sanctity of a jury's verdict, the court nonetheless held that the "no-impeachment rule must yield to allegations that racial bias was a factor in the verdict." *Berhe*, 193 Wn.2d at 658. In reaching this conclusion, the court balanced the need for robust jury deliberations with a defendant's right to a fair trial before an impartial jury. *Id*. Ultimately, the court recognized that "'[a] trial by a jury, one or more of whose members are biased or prejudiced, is not a constitutional trial.'" *Id*. (internal quotation marks omitted) (quoting *City of Seattle v. Jackson*, 70 Wn.2d 733, 738, 425 P.2d 385 (1967)).

After concluding that the no-impeachment rule must yield in the face of juror bias, the court went on to provide a framework for courts facing the issue of juror bias after a verdict. Under this framework, courts must conduct a thorough inquiry to determine if there is prima facie evidence suggesting that race was a factor in the jury's verdict. *Id*. at 665. If there is a prima facie showing, the court must hold an evidentiary hearing. *Id*.

*Behre* addressed juror bias after a verdict and held that prima facie evidence of juror bias was enough to invade otherwise sacrosanct deliberations. *Id.* at 658. While attorneys and courts are given similar autonomy during voir dire, the process must likewise yield when there is evidence that a potential juror labors under racial or ethnic bias.

10

No. 37843-8-III
*State v. Gutierrez*

We take direction from the Supreme Court's guidance and examples to address a similar issue here: whether the evidence of ethnic bias during voir dire was sufficient to raise a prima facie showing that the juror was not qualified under RCW 2.36.110. In this case, juror 16's first comment was about citizenship. He had been summoned as a potential juror in two prior cases, both with Hispanic defendants and was frustrated that he was not told whether they were citizens of the United States. Likewise, juror 16 wanted to know if Mr. Gutierrez was a citizen and offered to ask Mr. Gutierrez himself.

Juror 16's comments demonstrated ethnic bias sufficient to raise a prima facie showing that he was unqualified to sit as a juror in Mr. Gutierrez's case. Under RCW 2.36.110, the trial court was required to either inquire further or excuse the juror as disqualified. Since the comment was made during voir dire, there was no need for a separate evidentiary hearing, but the prima facie showing required the court to either confirm that that the juror did not hold a bias against Latinx and Hispanic defendants or excuse the juror.

Our holding today should not be read to require the disqualification of every juror who inquiries about citizenship or immigration status. Lay jurors often fail to recognize and distinguish relevant evidence from irrelevant information, which is why we have rules of evidence. In this case however, juror 16's inquiry was more than a naïve inquiry about an otherwise irrelevant topic.

11

No. 37843-8-III
*State v. Gutierrez*

The State also contends that any evidence of bias was "cured" by defense counsel's subsequent questioning. Suppl. Br. of Resp't at 14. After juror 16 inquired of Mr. Gutierrez's citizenship, and defense counsel explained why this topic was not relevant, the following colloquy took place:

> [DEFENSE COUNSEL]: . . . So [citizenship] will not come up here.
>
> Is there a reason that that would give you pause in being fair to Mr. Gutierrez?
>
> PROSPECTIVE JUROR NUMBER 16: If I didn't know then I would have—I guess no reason to question that, I guess, if he was a U.S. citizen or not. If he's not a U.S. citizen he's already guilty. He shouldn't be here.
>
> [DEFENSE COUNSEL]: Well, fair enough. That's a good point. But you wouldn't be saying then if he's not a citizen, he's guilty of the charges here, the robbery, the assault, the possession of a gun, you wouldn't be saying that because that's wholly separate, right?
>
> PROSPECTIVE JUROR NUMBER 16: Yes. Yeah. I mean, if I don't know—I just—that would be—that wouldn't be part of the—my answer for it. So, yeah.
>
> [DEFENSE COUNSEL]: Thank you, juror 16.

RP at 167-68.

Without deciding whether expressions of ethnic bias by a juror can ever be cured, we do not agree with the State's characterization of the colloquy. A fair reading of juror 16's comment suggests that juror 16 believed that if Mr. Gutierrez were not a citizen, he would have been guilty of another crime and not available for this trial. This is not the same as saying that if Mr. Gutierrez was not a citizen, he is guilty of *any* crime, but it

12

No. 37843-8-III
*State v. Gutierrez*

does not cure the evidence of actual bias. Instead, juror 16 seemed to convince himself that Mr. Gutierrez must be a citizen (or otherwise in the country legally) or else he would not be available for this trial. This did not cure juror 16's presumption that the citizenship of every Hispanic or Latinx defendant was suspect and needed to be verified.

Despite the highly strategic nature of voir dire, a trial court has an obligation to oversee the jury selection process. *Guevara Diaz*, 11 Wn. App. 2d at 846. When a juror expresses actual bias, and the attorneys do not move to excuse the juror, the court has an obligation to conduct an independent inquiry and excuse the juror if the court is satisfied that the juror cannot try the issues impartially and without prejudice to the substantial rights of parties. *Id*. at 855; RCW 4.44.170(2). The failure to remove a biased juror requires a new trial without the showing of prejudice. *Id*. at 855.

CONCLUSION

Juror 16 expressed actual bias during voir dire by presuming that Hispanic or Latinx defendants were not citizens and were most likely committing an immigration crime. When the attorneys failed to address this bias, the court should have inquired

13

No. 37843-8-III
*State v. Gutierrez*

further or excused the juror on its own initiative.  Failure to do so is an abuse of

discretion.  We reverse and remand.

_____
Staab, J.

No. 37843-8-III

FEARING, J. (concurring) —

One of the myths arising from the folklore surrounding jury selection is that a juror who has made answers which would otherwise disqualify him by reason of bias or prejudice may be rehabilitated by being asked whether he can put aside his personal knowledge, his views, or those sentiments and opinions he has already, and decide the case instead based solely on the evidence presented in court and the court's instructions. *Montgomery v. Commonwealth*, 819 S.W.2d 713, 717 (Ky. 1991).

This court must decide whether the trial court should have removed for cause, without motion from a party, juror 16, who reflexively asked if a Latinx defendant resided in the United States legally and who declared that a Hispanic inside the United States illegally is automatically guilty of a crime. I agree with the majority that the court should have done so. I, however, disagree with the majority's interpretation of juror 16's answer to a voir dire question. Also, I differ from the majority when it declines to address whether juror 16 could be rehabilitated by further questioning. I write separately to analyze the voir dire answers of juror 16 and to explain why I conclude juror 16 could not be rehabilitated regardless of additional questioning. When doing so, I identify principles supporting removal of juror 16, elucidate instructive foreign cases, and emphasize the essentiality of jurors disinclined to racial stereotyping.

No. 37843-8-III
*State v. Gutierrez* (concurrence)

In response to Robert Gutierrez's contention that a biased juror infected his guilty verdict, the State emphasizes the ethnicity of defense counsel, highlights a juror orientation video, asserts that one answer during voir dire rehabilitated juror 16, promotes the satisfaction of defense counsel with the seating of juror 16, highlights Robert Gutierrez's acquittal on one charge, and advocates for deferral to the superior court's discretion. My concurring opinion answers the assertions of the State by demonstrating that some of the contentions are irrelevant and others are mistaken.

The State highlights the ethnicity of defense counsel. In its brief, the State quotes trial defense counsel as commenting "I'm a black man." Report of Proceedings (RP) at 21-22. The State then writes: "Further, this juror [juror 16] was left on the jury by trial counsel who throughout voir dire was focused on the fact that he, counsel was a Black man and that his client was 'brown.'" Br. of Resp't at 15. Nevertheless, contrary to the State's assertions, I know of no principle declaring that, if a minority counsel represents a minority defendant, the rules precluding juror bias disintegrate.

In *State v. Jackson*, 75 Wn. App. 537, 879 P.2d 307 (1994), the trial court denied a motion for new trial after reviewing an affidavit from one juror repeating comments made, in the deliberation room, by a second juror. The second juror commented that the worse part of a class reunion was socializing with "'the coloreds.'" 75 Wn. App. at 541. This second juror added: "'You know how these coloreds are.'" 75 Wn. App. at 541. When denying a new trial, the superior court judge mentioned his Japanese descent and

2

No. 37843-8-III
*State v. Gutierrez* (concurrence)

the past discrimination in the United States against Japanese. Despite the sensitivity of the trial judge to discrimination, this court reversed the conviction because of the racial generalizations made by the second juror.

The State underscores the displaying of a video on unconscious bias during jury orientation. But juror 16's later targeting of a Latino defendant as being illegally in the United States palpably demonstrates the video failed to enlighten him. Assuming the juror watched the video with his eyes and ears open, he learned nothing about his inherent biases. A video on unconscious bias will not change one with biased views who denies holding biased views.

The State focuses on the questions posed and answers received during voir dire, which questions and answers satisfied defense counsel and the superior court that juror 16 lacked bias. Because of the critical nature of the exchange between defense counsel and juror 16, I concentrate on those questions and answers.

> [DEFENSE COUNSEL]: . . . You've been listening or you appear to be listening. What are your thoughts about this? Anything I need to know about you before we go into picking the jury?
> PROSPECTIVE JUROR NUMBER 16: I think I have been summoned maybe three times, not put on a jury. And I think the two [defendants in those cases] before they were Hispanics, but they were never asked if they were a U.S. citizen. And that concerns me.
> [DEFENSE COUNSEL]: And that—and if we don't—if we don't cover that during the trial will that be a problem for you?
> PROSPECTIVE JUROR NUMBER 16: I thought maybe it would be brought up.
> [DEFENSE COUNSEL]: Because it may not come up in this particular trial.

3

No. 37843-8-III
*State v. Gutierrez* (concurrence)

PROSPECTIVE JUROR NUMBER 16: How about I ask now if he's a U.S. citizen?

[DEFENSE COUNSEL]: Well, turns out you're not allowed to ask that question, which is why it doesn't come out in trial. The Judge is not allowed to ask that question. Counsel aren't allowed to ask that question. I don't think I'm allowed to ask that question.

PROSPECTIVE JUROR NUMBER 16: Why is that?

[DEFENSE COUNSEL]: I imagine it has to do with some people's—the implication of noncitizen means perhaps you're implicating yourself in a crime. And you have the privilege, not you and I, everybody in the country has the privilege not to implicate themselves in a crime. So if somebody were here illegally in saying so, they will have admitted to a crime. And it's a federal crime. So I think that that's why it is. And that is such a serious protection that a judge can't ask that of a defendant. There's a whole Supreme Court case on it. So that's my thought. So it will not come up here.

Is there a reason that that would give you pause in being fair to Mr. Gutierrez?

PROSPECTIVE JUROR NUMBER 16: If I didn't know then I would have—*I guess* no reason to question that, *I guess*, if he was a U.S. citizen or not. If he's not a U.S. citizen he's already guilty. He shouldn't be here.

[DEFENSE COUNSEL]: Well, fair enough. That's a good point. But you wouldn't be saying then if he's not a citizen, he's guilty of the charges here, the robbery, the assault, the possession of a gun, you wouldn't be saying that because that's wholly separate, right?

PROSPECTIVE JUROR NUMBER 16: Yes. Yeah. I mean, if I don't know—I just—that would be—that wouldn't be part of the—my answer for it. So, yeah.

[DEFENSE COUNSEL]: Thank you, juror 16.

RP at 166-68 (emphasis added). The last question and answer could spawn pages of

parsing and analysis.

The majority construes juror 16's last answer as establishing that the juror

believed that, if Robert Gutierrez was not a citizen, he would be guilty of another crime

4

No. 37843-8-III
*State v. Gutierrez* (concurrence)

and not available for this trial. The majority implies that, because of his answers, juror 16 concluded that Gutierrez must be a citizen or else he would not be present for trial. I, however, cannot discern the meaning of the answer because of the double, if not triple, negatives in the question and answer, the overuse of pronouns, and the disjointed use of the English language. The different reading by the majority confirms the ambiguity in the exchange. Conversants often deem themselves communicating accurately when they are not. This difficulty inherent in communication demanded further and sharp questioning of juror 16. When a potential juror's initial responses indicate actual bias, an appellate court must be able to ascertain from the record that the trial court's decision not to excuse the potential juror for cause was not based in any way on a misunderstanding of what the potential juror actually said. *State v. Fire*, 100 Wn. App. 722, 729 (2000).

Even if I agreed with the majority's hermeneutics of juror 16's last answer during the voir dire colloquy, the juror's overall response established a prejudicial predisposition against Latino defendants. Juror 16 was summoned for jury service on two earlier occasions, and he grew disquieted on one or both occasions because the defendant was Hispanic and he never learned whether the defendant was a United States citizen. Because of the importance of the citizenship status of a Latinx defendant in juror 16's mind, he volunteered to ask Robert Gutierrez of his status. Juror 16 then proclaimed that, if Gutierrez was present in the United States without being a United States citizen, Gutierrez is guilty of an offense. Juror 16 never illuminated counsel and the court as to

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37843-8-III
*State v. Gutierrez* (concurrence)

whether he had concluded that Gutierrez was guilty of the crimes charged by the State of Washington or guilty of an immigration crime.

The State contends that the superior court holds an obligation to interfere in voir dire only if the questions and the efforts at rehabilitation fail to address a prospective juror's unequivocal statement of actual bias. The State also argues that the last response by juror 16 during voir dire rehabilitated him. I conclude that juror 16's comments showed perspicuous bias. I also conclude that no further responses from juror 16, after his questioning of Robert Gutierrez's immigration status, could rehabilitate him. Assuming rehabilitation was possible, the trial court should have inserted itself by further exploration of bias. I first analyze whether further questioning by defense counsel rehabilitated juror 16. I later examine whether rehabilitation was possible.

To repeat again, after juror 16 volunteered his viewpoint about the ethnicity of Robert Gutierrez, Gutierrez's counsel asked:

> [DEFENSE COUNSEL]: Well, fair enough. That's a good point. But you wouldn't be saying then if he's not a citizen, he's guilty of the charges here, the robbery, the assault, the possession of a gun, you wouldn't be saying that because that's wholly separate, right?

RP at 167. This leading question does little, if anything, to probe the nature and extent of juror 16's bias and his ability to adjudge the guilt or innocence of Robert Gutierrez solely on the evidence and the law. Defense counsel failed to ask sufficient questions to

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37843-8-III
*State v. Gutierrez* (concurrence)

rehabilitate juror 16 from his suspicious mindset that a Hispanic is already guilty of a crime. The superior court asked no questions, let alone probing questions.

Because of the difficulty in determining whether a person will be influenced by implicit racial bias, fleeting questioning about a prospective juror's bias and quick assessments of the credibility of his or her response fail constitutional scrutiny. *State v. Berhe*, 193 Wn.2d 647, 663-64, 444 P.3d 1172 (2019). Generic questions about juror impartiality may not expose specific attitudes or biases that can poison jury deliberations. *Peña-Rodriguez v. Colorado*, ___ U.S. ___, 137 S. Ct. 855, 869, 197 L. Ed. 2d 107 (2017). People rarely know the existence, source, and extent of their bias and will genuinely cling to a race-neutral reason created to mask a decision or viewpoint. *State v. Berhe*, 193 Wn.2d 647, 663-64 (2019). A person may honestly believe and credibly testify that racial bias does not influence his or her actions, even when implicit racial bias plays a significant role. *State v. Berhe*, 193 Wn.2d 647, 664 (2019).

When a question is raised regarding a prospective juror's ability to render an impartial verdict, the prospective juror must, in unequivocal terms, expressly state that his prior state of mind concerning either the case or either of the parties will not influence his verdict, and he must also state that he will render an impartial verdict based solely on the evidence. *People v. Blyden*, 55 N.Y.2d 73, 432 N.E.2d 758, 760, 447 N.Y.S.2d 886 (1982). All elements of the required statements must be voiced with conviction. *People v. Blyden*, 432 N.E.2d 758, 760 (1982). A hollow incantation, made without assurance or

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37843-8-III
*State v. Gutierrez* (concurrence)

certitude, is not enough. *People v. Blyden*, 432 N.E.2d 758, 760 (1982). If the juror expressed a statement of partiality without a subsequent assurance of impartiality, the court must presume juror bias. *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 855, 456 P.3d 869 (2020), *review denied*, 195 Wn.2d 1025, 466 P.3d 772 (2020).

In *People v. Blyden*, 432 N.E.2d 758 (1982), the New York high court reversed a conviction of Herbert Blyden for assault. During voir dire, a juror stated he was "against minorities," in part because he disliked preferences given to them in construction projects. 432 N.E.2d at 758. The trial judge thrice thereafter asked the juror if he could set aside his feelings about minorities. The juror repeatedly responded: "'Yes, I think I could.'" 432 N.E.2d at 759. The trial court rejected Blyden's challenge for cause. Blyden removed the juror as one of his preemptory challenges.

On appeal, the New York Court of Appeals, in *People v. Blyden*, noted that a previous expression of opinion or impression denoting actual bias can be overcome if the prospective juror declares under oath that he believes that such opinion or impression will not influence his verdict and that he can render an impartial verdict according to the evidence. Also, the trial court must be satisfied that the juror does not entertain such a present opinion as would influence his verdict. Nevertheless, in Herbert Blyden's prosecution, the juror's answers to the subsequent questioning by the judge did not overcome the indication of bias in the juror's initial comments. The juror never expressly

8

No. 37843-8-III
*State v. Gutierrez* (concurrence)

and unequivocally stated that his feeling toward minorities would not affect his verdict and that he would render an impartial verdict based on the evidence.

In *Menefee v. State*, 270 Ga. 540, 512 S.E.2d 275 (1999), a juror indicated prejudice against African-Americans. After the defense moved to remove the juror for cause, the trial court questioned the juror about whether she could set aside previous experiences with African-Americans and decide the case on the evidence. The juror responded: "I would like to try . . . it's hard to say absolutely." *Menefee v. State*, 512 S.E.2d 275, 276 (1999). The Georgia Supreme Court reversed the conviction. The questioning of the juror failed to elicit the necessary response that she would be able to lay aside her prejudices.

Similarly, questioning of juror 16 in Robert Gutierrez's voir dire failed to sufficiently probe the juror's views and biases or elicit a response essential for rehabilitation. I do not believe any additional questioning would rehabilitate the juror, but I will suggest some questions. The questions to be asked a juror will vary from circumstance to circumstance and later questioning will depend on answers to initial questions. But to probe the bias of juror 16, counsel or the court should have asked questions, perhaps outside the hearing of other jurors, surrounding the juror's wondering whether a Hispanic is a United States citizen, whether he would question non-Latinos' citizenship status, his views as to how many Hispanics reside in the United States illegally, his understanding of immigration law, why he deemed someone without

9

No. 37843-8-III
*State v. Gutierrez* (concurrence)


citizenship has committed a crime, his interactions with those he knows to be unlawfully in the United States, his interactions with people of Spanish descent, and whether he believed everyone in America should speak English.

Understandably, counsel and the court wish not to cross-examine a potential juror about bias or suggest that racism will infect the juror's decisions. But the liberty of the accused is at stake. Politeness must bend to a fair trial.

The State posits that the superior court could have reasonably perceived juror 16 to serve impartially. The State also maintains that the superior court sat in a better position to adjudge whether further questioning of and answers given by juror 16 rehabilitated him. Nevertheless, the superior court never exercised any discretion in deciding whether to excuse juror 16. The questioning of the juror never allowed the trial court to intelligently exercise discretion.

Sometimes the juror's strong bias disqualifies him from service regardless of rehabilitation through further questioning. *State v. Brown*, 732 N.W.2d 625, 629 n.2 (Minn. 2007); *Gamble v. Commonwealth*, 68 S.W.3d 367 (Ky. 2002). Stated differently, further questions do not provide a device to rehabilitate a juror who indicates a strong racial bias. *Gamble v. Commonwealth*, 68 S.W.3d 367, 372 (Ky. 2002). The Kentucky Supreme Court wrote:

> One of the myths arising from the folklore surrounding jury selection is that a juror who has made answers which would otherwise disqualify him by reason of bias or prejudice may be rehabilitated by being

10

No. 37843-8-III
*State v. Gutierrez* (concurrence)

> asked whether he can put aside his personal knowledge, his views, or those
> sentiments and opinions he has already, and decide the case instead based
> solely on the evidence presented in court and the court's instruction. This
> has come to be referred to in the vernacular as the "magic question." But,
> as Chief Justice Hughes observed in *United States v. Wood*, 299 U.S. 123,
> 146, 57 S. Ct. 177, 81 L. Ed. 78 (1936), "[i]mpartiality is not a technical
> conception. It is a state of mind." A trial court's decision whether a juror
> possessed "this mental attitude of appropriate indifference" must be
> reviewed in the totality of circumstances. It is not limited to the juror's
> response to a "magic question."

*Montgomery v. Commonwealth*, 819 S.W.2d 713, 717-18 (Ky. 1991).

Numerous cases teach that jurors with preconceived ideas about ethnicities should

not serve on the jury regardless of proclaiming an ability to be fair. In *State v.*

*Witherspoon*, 82 Wn. App. 634, 919 P.2d 99 (1996), juror 3 not only expressed concern

about African-Americans, he candidly admitted he was prejudiced. He commented that

he reads in the paper about black people dealing drugs. After further questioning during

voir dire, juror 3 agreed he would presume African-American Johnnie Witherspoon

innocent of the controlled substance charge. Nonetheless, this court concluded that juror

3 "unequivocally" showed a prejudice against African-Americans, and the trial court

abused its discretion in denying a challenge for cause. *State v. Witherspoon*, 82 Wn.

App. 634, 638 (1996).

*Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 860-61 (2017), presents some

analogs. Following the conviction of Miguel Peña-Rodriguez and the discharge of the

jury, two jurors informed defense counsel that H.C., one of the jurors, commented during

11

No. 37843-8-III
*State v. Gutierrez* (concurrence)

deliberations that "'nine times out of ten Mexican men were guilty of being aggressive toward women and young girls.'" 137 S. Ct. at 862. H.C. also commented that Peña-Rodriguez's alibi witness was not credible because, among other things, the witness was an "illegal," even though the witness testified he was a legal resident of the United States. 137 S. Ct. at 861-62. The high Court quickly determined that H.C. was biased based on defendant's Hispanic identity.

In *Gamble v. Commonwealth*, 68 S.W.3d 367 (Ky. 2002), juror 54 indicated that he had moved from his prior neighborhood because he had a young daughter and he "'never felt safe'" because there were "'black guys'" always around their house. 68 S.W.3d at 372. Juror 54 expressed a strong opposition to inter-racial relationships, characterized those involved in such a relationship as low class, and deemed low class people more likely to commit crime. Juror 54 stated that, upon entering the courtroom, he assumed Bennie Gamble to be the defendant because he "'figured a black had to be the person accused.'" 68 S.W.3d at 372. Nevertheless, juror 54 averred that he could base his decision solely on the evidence presented at trial. The trial court refused to excuse the juror for cause, and the African-American defendant exercised a peremptory challenge in order to avoid having the juror serving on the jury. The reviewing court reversed the conviction in part because of the inherent bias exhibited by juror 54. Although the juror eventually declared that he could be fair and reach a decision on the evidence, his initial comments illustrated that he held racist ideas that infected his view of

12

No. 37843-8-III
*State v. Gutierrez* (concurrence)

Gamble before the Commonwealth presented its first piece of evidence. The juror's bias could not be rehabilitated.

In *State v. Brown*, 732 N.W.2d 625 (Minn. 2007), the reviewing court reversed Jermaine Brown's controlled substance crime for lack of evidence, but also digressed to emphasize the unfairness of the jury. During voir dire, a juror declared his bias against African-Americans, stated that he did not trust Blacks, and commented that he would not allow his daughter's African-American boyfriend into the home. At the same time, the juror averred that he thought he could be fair to Brown, an African-American.

Regardless of juror 16's answers to rehabilitating questioning, he possessed a state of mind that required his removal from the jury panel because of his racial typecasting and presumption of guilt of a crime. Before the presentation of any evidence, he demanded to know more about Robert Gutierrez because of Gutierrez's Hispanic surname and/or the tincture of his skin. Even before opening statements, juror 16 targeted Gutierrez as a criminal because of his Latino heritage. Juror 16 automatically viewed Gutierrez, because of his ethnic descent, as a potential, if not likely, illegal, interloping outsider in Washington State. An outsider is presumed guilty and not entitled to the protections of the law.

Juror 16's remarks during Robert Gutierrez's voir dire showed not only bias, but a lack of understanding of the ramifications of residing in the United States or of even being present unlawfully in this nation. He wanted to know whether Gutierrez was a

13

No. 37843-8-III
*State v. Gutierrez* (concurrence)

United States citizen. Nevertheless, one can reside in the United States legally, but not be a citizen. Juror 16 believed otherwise. Juror 16 deemed Gutierrez guilty of a crime if he lived unlawfully within the United States even though the law does not deem unlawful presence by itself to be a crime. One can also be present unlawfully, but not guilty of a crime. As a general rule, a removable alien does not commit a crime if he remains present in the United States. *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 183 L. Ed. 2d 351 (2012). No one disabused juror 16 of his erroneous impressions.

Further implications arise from juror 16's questioning about Robert Gutierrez's immigration status. In my experience as a trial attorney and as a trial judge and in my reading of hundreds, if not thousands, of decisions, no other venireperson has attempted to ask a party a question before the presentment of the case. Juror 16's volunteering to ask Robert Gutierrez if he was a citizen evidenced a self-righteous, strident, and judgmental attitude that suggested he should not serve as a juror in any case, let alone a case wherein a Latinx is the accused. Going further, the juror's comments evidenced an entrenched ambience of superiority over Latino Americans. Without any evidence, he held entitlement to be present in the United States, but Gutierrez did not necessarily possess this entitlement. Juror 16 deemed he held the prerogative to adjudge another guilty of a crime because of the other's ethnicity. The juror would not hold this view with regard to someone who looks like him or has the same ancestry as him.

14

No. 37843-8-III
*State v. Gutierrez* (concurrence)


No one questioned juror 16 about his prospective reaction if seated on a venire in a prosecution against a defendant with a Northern European name or with Northern European looks. Nevertheless, we can almost be certain that the juror would have never asked whether a light skinned, blonde-haired, or English surnamed defendant lacked citizenship or was present illegally. Although the number is lower than the number of undocumented Hispanics, tens of thousands of Canadians, most of which lack a Latinx background, are unauthorized immigrants. The precise number is unknown but ranges from 60,000 to 100,000. Tom Blackwell, *Northern Aliens: Around 100,000 Canadians Live under the Radar in the U.S. as Illegal Immigrants*, NATIONAL POST, March 19, 2017; Emma Israel and Jeanne Batalova, *Canadian Immigrants in the United States*, MIGRATION POLICY INSTITUTE, June 15, 2021; Abby Budiman, *Key Findings about U.S. Immigrants*, PEW RESEARCH CENTER, August 20, 2020. Border authorities caught more than 1,000 Ukrainians unlawfully crossing the United States-Mexico border between October 2021 and January 2022. Eileen Sullivan, *Biden Administration Gives Temporary Protected Status to Some Ukrainians in the U.S.*, NEW YORK TIMES, March 4, 2022.

Appellate courts must not always defer to the discretion of the trial court, but reviewing courts must also play a role in ensuring an impartial jury. Appellate deference to trial court determinations of the ability of potential jurors to be fair and impartial should not amount to a rubber stamp. *State v. Fire*, 100 Wn. App. 722, 729, 998 P.2d 362 (2000), *rev'd on other grounds*, 145 Wn.2d 152, 34 P.3d 1218 (2001).

15

No. 37843-8-III
*State v. Gutierrez* (concurrence)


The discerning reader will wonder why a reviewing court should reverse the conviction of Robert Gutierrez when we do not know how any bias influenced juror 16's thinking after hearing the evidence presented by the State during trial. After all, juror 16 could have set aside his prejudice and convicted based on the facts and the law. Eleven other jurors, presumably absent of prejudice against Latinx, voted to convict Gutierrez. As underscored by the State, juror 16, along with the other jurors, acquitted Gutierrez of the most serious charge. Going further, all jurors, if not all human beings, bear prejudices. The law cannot eradicate bias in jury service without ending the jury system, if not terminating the justice system. As the argument ends, wokeness should not trump judicial economy.

I answer these arguments by observing that no bias may be worse than partiality based on race or color. A fair trial before an impartial jury extends to a criminal defendant's fundamental protection of life and liberty against race or color prejudice. *McCleskey v. Kemp*, 481 U.S. 279, 310, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987); *Strauder v. West Virginia*, 100 U.S. 303, 309, 25 L. Ed. 664 (1879), *abrogated on other grounds by Taylor v. Louisiana*, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975). Discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice. *Rose v. Mitchell*, 443 U.S. 545, 555, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979). The United States must rise above racial classifications inconsistent with our commitment to the equal dignity of all persons. *Peña-Rodriguez v. Colorado*, 137 S.

16

No. 37843-8-III
*State v. Gutierrez* (concurrence)


Ct. 855, 867 (2017). The Civil War Amendments to the United States Constitution introduced the imperative to purge racial prejudice from the administration of justice. *Peña-Rodriguez v. Colorado*, 137 S. Ct. at 867.

There is a sound basis to treat racial bias with added precaution. A constitutional rule that racial bias in the justice system must be addressed is necessary to prevent a systemic loss of confidence in jury verdicts, a confidence that is a central premise of the Sixth Amendment to the United States Constitution trial right. *Peña-Rodriguez v. Colorado*, 137 S. Ct. at 869.

Jurors acting pursuant to racial profiling challenges the American belief that the jury functions as a bulwark of liberty. *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 867 (2017). The jury must be a protection against, not an instrument of, race and color prejudice. *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 868. Racial prejudice destroys the jury's role as a vital check against the wrongful exercise of power by the State. *Powers v. Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

*Peña-Rodriguez v. Colorado* establishes that some jurors will assume a Latinx is present in the United States illegally despite testimony to the contrary. Robert Gutierrez's trial court, the State, and defense counsel failed to disabuse juror 16 of the possibility that Gutierrez was present unlawfully. Some jurors also believe that Latinx men, or at least nine of out ten Latinos, all act aggressively.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37843-8-III
*State v. Gutierrez* (concurrence)


Despite an impact on judicial economy, the trial court should discharge a prospective juror for cause when any doubt remains as to impartiality in the wake of statements of bias. *People v. Blyden*, 432 N.E.2d 758, 760 (1982). The costs to society and the criminal justice system of discharging the juror are comparatively slight, while the costs in fairness to the defendant and the general perception of fairness of not discharging such a juror are great. *People v. Blyden*, 432 N.E.2d 758, 760 (1982). The trial court should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror to serve. *People v. Culhane*, 33 N.Y.2d 90, 108 n.3, 305 N.E.2d 469, 350 N.Y.S.2d 381 (1973). The juror system makes available many venirepeople for this reason. *People v. Culhane*, 33 N.Y.2d 90, 108 n.3 (1973). Even if, through caution, the court errs and removes an impartial juror, the worst the court will have done is to have replaced one impartial juror with another impartial juror. *People v. Culhane*, 33 N.Y.2d 90, 108 n.3 (1973).

More important than speedy justice is the recognition that every defendant is entitled to a fair trial before twelve unprejudiced and unbiased jurors. *State v. Parnell*, 77 Wn.2d 503, 507, 463 P.2d 134 (1969). Not only should there be a fair trial, but there should be no lingering doubt about it. *State v. Parnell*, 77 Wn.2d 503, 508 (1969).

I concur:

_____

Fearing, J.

18

No. 37843-8-III

SIDDOWAY, C.J. (concurring in result) — In Washington, the "actual bias" that disqualifies a juror is defined by statute. It is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party." RCW 4.44.170(2).

With the benefit of a transcript and focused argument, we can see that juror 16 revealed the striking misconception that if a person is not a *United States citizen*, then he or she commits a crime by being in this country. Most people presumably understand that there are a number of avenues by which noncitizens legally visit and live in this country without being United States citizens—including avenues that lead to United States citizenship. Juror 16 had a particular interest in determining if Hispanic defendants were not United States citizens. If Mr. Gutierrez was not a United States citizen, juror 16 said, "[H]e's already guilty. He shouldn't be here." Report of Proceedings at 167.

Mr. Gutierrez's trial lawyer and the State have characterized juror 16's expressed views as less extreme: as a concern about people who *actually are* in the United States

No. 37843-8-III
*State v. Gutierrez* (concurring in result)

illegally.[1]  A prospective juror with only that concern could be rehabilitated by questioning if the trial court was satisfied the juror accepted the irrelevance of immigration status to the prosecution and provided assurance that speculation about immigration status would not affect the juror's ability to be fair and impartial.  I agree with the majority that more was required to rehabilitate juror 16.  Juror 16's misunderstanding of immigration law and particular application of that misunderstanding to Hispanics was enough to demonstrate actual bias.

In *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 456 P.3d 869, *review denied*, 195 Wn.2d 1025, 466 P.3d 772 (2020), this court was also faced with a juror who demonstrated actual bias inadequately addressed by the lawyers' voir dire.  In completing a juror questionnaire, juror 23 had answered "no" to the question, "'Can you be fair to both sides in a case involving allegations of sexual assault or sexual abuse?'"  *Id.* at 846.

---

[1] It is reported that Americans of all backgrounds assume there are far more undocumented Latino individuals living in the United States than is actually the case. Suzanne Gamboa, "*Americans Way Off on Number of Latinos They Think Are Undocumented, Poll Says*," NBC NEWS (Sept. 30, 2021), https://www.nbcnews.com /news/latino/americans-way-number-latinos-think-are-undocumented-poll-finds-rcna2464 [https://perma.cc/E2GP-YH4V].  The story reports that about 13 percent of the 62 million Latinos in the United States are undocumented according to the Department of Homeland Security and census information, yet all demographics surveyed believed the figure was two to three times higher.  *Id.*  Latinos themselves were reported to believe that 36 percent of Latinos were undocumented.  *Id.*

Well-meaning citizens may unfortunately rely on sources of information that not only exaggerate the number of undocumented Latinos but provide misleading information about burdens or dangers they pose to our communities and system of government.

No. 37843-8-III
*State v. Gutierrez* (concurring in result)

Neither lawyer questioned juror 23 about that answer. *Id.* at 847. Citing RCW 2.36.110, CrR 6.4(c), and controlling case law, this court observed that "[t]he trial judge has an obligation to excuse a juror where grounds for a challenge for cause exist, even if neither party challenges that juror." *Id.* at 855 & n.30. The court then analogized to our Supreme Court's decision in *State v. Behre*, 193 Wn.2d 647, 444 P.3d 1172 (2019), to hold that if the lawyers do not address a juror's demonstration of actual bias with rehabilitation or a challenge for cause, the trial court must act. *Behre* held that when it is alleged that *jury deliberations* were tainted by racial bias, an investigation must be conducted under the court's supervision, on the record; the court in *Guevera Diaz* held that the trial judge should have similarly used voir dire to "ask juror 23 about her statement that she could not be fair to determine her ability to be impartial." *Guevara Diaz*, 11 Wn. App. 2d at 856; *see Behre*, 193 Wn.2d at 662.

I agree with *Guevera Diaz* and the majority that when a prospective juror demonstrates actual bias and is not rehabilitated or challenged by the parties, the trial court is required to act. It must either dismiss the juror sua sponte or ask the prospective juror about statements that demonstrate bias to determine the juror's ability to be impartial. Neither happened here, so we must reverse Robert Gutierrez's convictions and remand for a new trial.

3

No. 37843-8-III
*State v. Gutierrez* (concurring in result)


I part ways with the majority's suggestion that *Behre*'s framework for addressing allegations that *jury deliberations were tainted by actual bias* has application to voir dire. As explained in *Behre*, in that singular context in which the jury's verdict may be impeached, "courts must carefully control the inquiry" to the exclusion of the parties. 193 Wn.2d at 657. This is completely unlike voir dire, in which the court is only required to step in if the parties' questions, and the parties' efforts at rehabilitation, fail to address a prospective juror's statement of actual bias.

In that different context, *Behre* explains that before deciding whether to conduct an evidentiary hearing, "courts [must] thoroughly consider the evidence and conduct further inquiry if there is *a possibility* that racial bias was a factor in the verdict." *Id.* (emphasis added). This, too, is completely unlike voir dire, in which "a trial court should exercise caution before injecting itself into the jury selection process." *State v. Lawler*, 194 Wn. App. 275, 284, 374 P.3d 278 (2016).[2]

Suggesting that *Behre* has application to voir dire beyond its discussion of the trial court's responsibility to safeguard a defendant's constitutional right to an impartial jury

---

[2] Washington courts address implicit bias in an advance oral instruction to prospective jurors, which the lawyers can key off of in voir dire. 11 WASH. PRACTICE, PATTERN JURY INSTRUCTIONS: CRIMINAL § 1.01, at 11-12 (5th ed. 2021). Some Washington courts also address implicit bias in a video shown to prospective jurors. *See* Sarah Desautels, *Limitations of Washington Evidence Rule 413*, 95 WASH. L. REV. 429, 448-50 (2020).

No. 37843-8-III
*State v. Gutierrez* (concurring in result)


could cause trial courts to enlarge their role in voir dire beyond anything intended by the

Supreme Court.  For that reason, I concur in only the result.


_____
Siddoway, C.J.